# EXHIBIT A

**VIRGINIA:**

## IN THE CIRCUIT COURT OF ALEXANDRIA CITY

| | | |
|---|---|---|
| **AFFORDABLE MARKETING LISTS, LLC** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **SOME CORPORATION** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JOSHUA D. STACY** | ) | |
| c/o Fox & Moghul | ) | |
| 3871 Plaza Drive | ) | |
| Fairfax VA 22030 | ) | |
| | ) | |
| Plaintiffs, | ) | **Case No.:** CL20001768 |
| | ) | |
| v. | ) | |
| | ) | |
| **LORD ABBEY, LLC** | ) | |
| Serve: | ) | |
| **LORD ABBEY, LLC** | ) | |
| 1391 E 400 N, Provo, | ) | |
| UT, 84606, USA | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **WYATT GRANTHAM** | ) | |
| Serve: | ) | |
| 1391 E 400 N | ) | |
| Provo, UT 84606 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **CATHERINE LILY GRANTHAM** | ) | |
| Serve: | ) | |
| 1391 E 400 N | ) | |
| Provo, UT 84606 | ) | |
| | ) | |

FILED
CITY OF ALEXANDRIA
CLERK OF COURTS
2020 MAY 18 PM 2: 30
J. GREG PARKS, CLERK
BY _____
DEPUTY CLERK

| | |
|---|---|
| and | ) |
| | ) |
| **WELLS FARGO BANK, NATIONAL** | ) |
| **ASSOCIATION** | ) |
| **(Nominal Defendant)** | ) |
| **Serve:** | ) |
| **Corporation Service Company** | ) |
| **100 Shockoe Slip Fl 2,** | ) |
| **Richmond, VA, 23219 - 4100, USA** | ) |
| | ) |
| and | ) |
| | ) |
| **STRIPE INC.** | ) |
| **(Nominal Defendant)** | ) |
| **Serve:** | ) |
| **CT Corporation System** | ) |
| **4701 Cox Rd Ste 285,** | ) |
| **Glen Allen, VA, 23060 - 6808, USA** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

COME NOW, Plaintiffs Joshua Stacy, Affordable Marketing Lists, LLC and Some

Corporation (collectively, "Plaintiffs"), by and through undersigned counsel, and hereby

complain as follows:

## NATURE OF THIS ACTION

Under the guise of "helping out a friend," the named defendants in this action brazenly

stole Plaintiff Joshua Stacy's profitable business while he recovered from health issues.

Mr. Stacy is a successful entrepreneur with a strong background in technology and

insurance. Since 1999, Mr. Stacy has been successfully leveraging his experience in these

industries to sell several websites to local businesses, and in 2002, he created an online business

directory for Oswego, New York.

In 2012, Mr. Stacy founded AML (d/b/a ListShack) for the purpose of providing lead generation services to salespeople, marketers, and small businesses. ListShack was immediately profitable, and its success was largely attributable to Mr. Stacy's active participation on internet discussion boards, which made him a preferred vendor among many users looking for marketing lists. ListShack's growing success soon garnered the attention of other major companies in the industry for a potential buy-out.

In 2019, Mr. Stacy was going through personal and health issues, which compromised his ability to effectively manage AML, and its holding company, Some Corporation (collectively, the "Business")[1]. Defendant Wyatt volunteered to "just be a friend," and temporarily manage the Business while Mr. Stacy recovered. Thus, in September of that year Mr. Stacy temporarily entrusted the management of his Business to Defendant Wyatt.

Unbeknownst to Mr. Stacy, however, Defendant Wyatt Grantham's intent from the very beginning was to sabotage the Business by diverting all corporate opportunities for his personal benefit. Soon after obtaining management control of the Business, Defendant Wyatt created a clone website, listshack.support, that unlawfully used the Plaintiffs proprietary software, trade secrets, trademarks, and trade dress, changed the Domain Name Settings (DNS) settings on AML's servers to re-direct all incoming traffic to his cloned website hosted on servers controlled by him, misrepresented himself as the "new owner," founder and creator of the ListShack brand to Plaintiffs' vendors and customers, and sold the same data that the Business sold to its customers through the cloned website.

---

[1] The Business includes all Intellectual Property, as defined under paragraph 24.

## PARTIES

1. Plaintiff Affordable Marketing Lists, LLC ("AML") (d/b/a "List Shack") (SCC ID: S4558328) is a limited liability company formed under the laws of the Commonwealth of Virginia on May 21, 2013.

2. Plaintiff Some Corporation ("Some Corp.") (SCC ID: 08215717) is a corporation formed under the laws of the Commonwealth of Virginia on August 11, 2017, with its initial principal office located at 2915 Hunter Mill Road Suite 15, Oakton, VA 22124. The corporation was formed to act as a holding company for certain assets, including AML's, and its shareholders are Mr. Josh Stacy and Steven Young. Mr. Stacy owns 90 percent of the total outstanding 25,000 shares issued, with Mr. Young owning the remainder (hereinafter, AML and Some Corp shall collectively be referred to as the "Business"). The entity was created during Mr. Stacy's separation from his now ex-wife to, among other things, segregate assets for purposes of equitable distribution of property.

3. Plaintiff Joshua D. Stacy ("Plaintiff JDS" or "Mr. Stacy") is a natural person residing in the State of California who, at all times relevant herein, was the owner of the Business, and all software, technology and other Intellectual Property described herein.

4. Defendant Lord Abbey, LLC ("Lord Abbey") (SCC ID: S6275491) was a Virginia-based limited liability company formed on July 19, 2016, with its initial principal office located at 19441 Youngs Cliff Rd, Potomac Falls, VA 20165. At all times relevant herein, Defendants Wyatt Grantham and Catherine Grantham were its joint owners and members. On May 4, 2020, Defendant Wyatt Grantham strategically filed "Articles

of Organization Surrender of Lord Abbey, LLC" to remove the entity's domestication from the Commonwealth of Virginia to Utah.

5. Defendant Wyatt Grantham was a resident of the Commonwealth of Virginia until he moved to California in 2017. Upon information and belief, Defendant Wyatt currently resides in the State of Utah.

6. Defendant Catherine Lily Grantham was a resident of the Commonwealth of Virginia until she moved to California in 2017. Upon information and belief, Defendant Catherine currently resides in the State of Utah.

7. Defendant Wells Fargo Bank, National Association (SCC ID: F1870973) is a corporation authorized to transact business in the Commonwealth of Virginia, with its principal office located at 464 California Street, San Francisco, California 94104. Defendant is included in this suit as a nominal defendant only for purposes of Counts 22 (Pre-judgment Seizure) and 25 (Constructive Trust).

8. Defendant Stripe Inc. (SCC ID: F2026039) is a corporation authorized to transact business in the Commonwealth of Virginia, with its principal office located at 510 Townsend Street, San Francisco, CA 94103. Defendant is included as a nominal defendant only for purposes of Counts 22 (Pre-judgment Seizure) and Count 25 (Constructive Trust).

## JURISDICTION AND VENUE

9. Jurisdiction is proper in this Court pursuant to Va. Code Ann. § 8.01-195.4 in that the value of the amount in controversy exceeds $15,000.00.

10. Specific personal jurisdiction over the exists pursuant to Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1(A)(1)-(4) and (B), as well as under the Due Process Clause

of the U.S. Constitution since the causes of action asserted in this Complaint arise from, among other things, the Defendants Wyatt, Catherine and Lord Abbey having caused tortious injury by an act or omission in this Commonwealth. Furthermore, exercising jurisdiction would not offend traditional notions of fair play and substantial justice because Defendant could have – and should have – reasonably foreseen being hauled into a Virginia court to account for defrauding a Virginia.

11. Venue is proper with this Court pursuant to Va. Code Ann. § 8.01-262(3) and (4).

## FACTUAL BACKGROUND
### ListShack.com

12. On or around May 21, 2013, Mr. Stacy formed AML (d/b/a ListShack) by registering the entity with the Virginia State Corporation Commission.

13. At all times relevant herein, Mr. Stacy was AML's sole owner and member.

14. On or around June 6, 2012, AML purchased the domain name www.listshack.com ("ListShack"), with the goal adding enhancements and features and eventually creating a subscription-based model in lead-generation for small businesses.

15. The company's mission is articulated on its website as follows:

> Welcome to ListShack.com - Our mission is simple: to help salespeople, marketers, and small businesses get more clients. We do this by providing a comprehensive database of sales leads available 24 hours a day, seven days a week, with the filters you need. For business leads you can search by the type of business, number of employees, sales volume, years in business, and whether or not the business has a website. For consumer leads you can search by age, income, homeowner status, property value, marital status, gender, and DNC status. For both you can pick the area by state, county, zip code, or area codes. Your sales leads can be used as a telemarketing list or mailing list depending on the criteria that you select.

16. Developing and optimizing ListShack required a substantial investment of time and financial resources by Plaintiff JDS, including the purchase, installation, and setup of several servers and databases, hiring of a database administer, and the cumulative efforts spent building a loyal customer base.  The total out of pocket costs exceeded $25,000.[2]

17. At all times relevant herein, the proprietary Intellectual Property of the Plaintiffs was stored on servers located in Fairfax County, Virginia, with a monthly rent of approximately $850/month.

18. ListShack soon became a profitable business. Mr. Stacy was able to recover his initial investment within the first sixty (60) days of business operations, and profits continue to increase annually.

| Affordable Marketing Lists, LLC Annual Sales Volume | |
|---|---|
| 2012 | $69,524 |
| 2013 | $87,886 |
| 2014 | $237,942 |
| 2015 | $425,258 |

19. As the business grew, Mr. Stacy diversified ListShack's interests by pursuing various projects, which included not only data science and analytics, but video streaming, CRMs, and various other web development projects.

---

[2] On January 22, 2014, as agreed to between AML and Mr. Stacy and Steven Young, Mr. Young completed the coding project for the ListShack via Upwork for "creation of a user interface with searchable database," and accepted full payment from Mr. Stacy, the owner any rights associated with said code.

20. Mr. Stacy continued developing the ListShack platform, and several new features and enhancements were incorporated into ListShackPro.com, including the addition of high-usage plans.

21. On September 2, 2014, AML registered the domain www.listshackpro.com.

22. The model was described as follows (see Exhibit 1):

> ListShack Pro is an online digital platform that connects business owners, marketers, and salespeople with potential prospects. We offer an easy to use interface that allows you to target potential customers using geography and filters. Our goal is to help you get the right type of sales leads that fit the needs and wants of your business or organization.

23. For the next several months, Mr. Stacy worked on the enhancements for ListShack Pro, while continuing to increase company revenues.

24. By this time, Plaintiff JDS had developed the ListShack brand to include a business platform for the ListShack and ListShack Pro trademarks and related domains and websites (the marks "Listshack" and "ListShack Pro" hereinafter referred to as "Trademarks"), proprietary software, data, databases, and servers, trade dress[3], trade secrets, customer lists, accounting management systems and documentation related to the same (all hereinafter referred to collectively as **"Intellectual Property" or "IP"**).[4]

25. Due to the ListShack's growing success, another company named Bashpole Software Inc. attempted its purchase for five ($5) million and initiated due diligence with an expected close data of December 1, 2016.

---

[3] The trade dress of a product consists of its "total image and overall appearance," including its "size, shape, color or color combinations, texture, graphics, or even particular sales techniques." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 764 n. 1, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (quoting district court instruction); Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd., 187 F.3d 363, 368 (4th Cir. 1999).

[4] On June 1, 2012, Mr. Stacy granted a non-exclusive license for the use of the trademark "LISTSHACK" and accompanying intellectual property to the Business. Later, he did the same for "LISTSHACK PRO" and its accompanying IP to the Business.

26. However, during this time, Mr. Stacy was enduring a contentious divorce, which resulted in a series of unfortunate events that prevented the Bashpole deal from closing.

### *With Friends Like These* ... Wyatt's Sabotage Begins

27. In August 2019, Mr. Stacy was going through certain mental health issues, which compromised his ability to manage the Business.

28. Several years ago, around 2016, Mr. Stacy had helped Defendant Wyatt's then-struggling Fairfax-based software company, Analyze Corporation,[5] by giving him a project to work on for certain monthly compensation. This largely consisted of business strategy discussions related to Mr. Stacy's enterprise.

29. When Defendant Wyatt became aware of Mr. Stacy's personal health circumstances around August 2019, he volunteered to gratuitously assist with temporarily managing the Business.[6]

30. In October 2019, Mr. Stacy was admitted to a hospital in California due to mental health issues.

31. Around this time, Defendant Wyatt represented to Mr. Stacy that he was busy with full-time projects, and therefore will not require compensation for temporarily managing the Business until Mr. Stacy recovered.

32. Defendant Wyatt stated, he "just wanted to be a friend" and help Mr. Stacy during this time. Given the parties friendship and Defendant Wyatt's previous experience in both

---

[5] The company website lists Wyatt Grantham as a "co-founder" at Analyze, describing his background as follows: "Served as researcher and policy advisor with Scottish Parliament. Software entrepreneur and business executive" *available at* http://analyzecorp.com/our-team. Defendant Wyatt continues to hold himself out as a co-founder of Analyze Corporation.

[6] Given Defendant Wyatt's prior experience working with AML, the time it would take to bring him up to speed was nominal and would have been a tremendous help to Mr. Stacy in his time of need, consistent with their relationship having met originally in Fairfax, VA at the Fair Oaks branch of The Church of Jesus Christ of Latter-Day Saints (a.k.a. Mormon).

the industry and with AML, it would make it easy for him to steer with minimal effort and that seemed like a helpful offer from a friend. Plaintiffs were in a relationship of special confidence with Defendant Wyatt, who acted in a fiduciary capacity on their behalf.[7]

33. At the time Defendant Wyatt made these misrepresentations, he had no present intent to perform[8].

34. Mr. Stacy relied upon these representations and entrusted management of the Business to Defendant Wyatt temporarily starting November 2019.

35. This allowed Defendant Wyatt to control the bank accounts, assets and Intellectual Property of the Business.

36. Mr. Stacy provided Defendant Wyatt with temporary access to his personal email account, joshua.stacy@gmail.com, which contained all business, financial, Intellectual Property and other information related to the Business.

37. This presented the ideal opportunity for Defendants Wyatt and Catherine to begin his premeditated and malicious sabotage and theft of the Business.

38. Accordingly, within a month of being named Chief Financial Officer of Some Corporation and assuming control of the Business, Defendant Wyatt began his planned sabotage of the Business, with the active participation of Defendant Catherine.

---

[7] "A fiduciary relationship exists in all cases when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." Augusta Mut. Ins. Co. v. Mason, 274 Va. 199, 645 S.E.2d 290 (2007). "A confidential relationship "springs from any fiduciary relationship, and when such relationship is found to exist, any transaction to the benefit of the dominant party and to the detriment of the other is presumptively fraudulent." Nicholson v. Shockey, 192 Va. 270, 278, 64 S.E.2d 813, 817. (1951) (emphasis added). Ayers v. Shaffer, 286 Va. 212, 225–26, 748 S.E.2d 83, 91 (2013).

[8] "If an individual makes a promise, intending not to perform, his promise is a misrepresentation of present fact, and, if made to induce promisee to act to his detriment, is actionable as an actual fraud." Colonial Ford Truck Sales, Inc. v. Schneider, 228 Va. 671, 325 S.E.2d 91 (1985).

### Phase I: The Setup
### The Cloned Website: *ListShack.Support*

39. On October 15, 2019, Defendant Wyatt registered the domain listshack.support ("Clone Website") under the ownership of Lord Abbey – an entity he co-owns with Defendant Catherine Grantham (see Exhibit 2)

40. Upon information and belief, the domain for the Clone Website is hosted through Amazon Web Services ("AWS").

41. On or around October 2019, Defendant Wyatt hired two individuals he had previously worked with on other projects, Mitchell Humphreys and Rachel Northcutt, to create and support the Clone Website.

42. Next, Defendant Wyatt used Mr. Stacy's personal login information to access AML's web servers hosted by Atlantic Metro Communications Inc. ("AMC"), which allowed him to access and download the entirety of AML's current and historical data.[9]

43. Defendant Wyatt made unauthorized copies of the databases, images, and other Intellectual Property that were saved in Mr. Stacy's personal email address, (joshua.stacy@gmail.com), and used that same email address to gain access to the Businesses vendors, such as AMC.

44. Furthermore, without the Plaintiffs authorization and consent, Defendant Wyatt forwarded hundreds of emails containing proprietary IP for the Business from Mr. Stacy's personal email to his own email, wyatt@listshack.support.

---

[9] Defendant Wyatt obtained the passwords for AML's web servers by false pretenses from Mr. Dan Emerick, the database manager for ListShack, by representing to him that Mr. Stacy had authorized such disclosure. However, Defendant Wyatt had no authority to probe into AML's web servers absent explicit authorization for such task.

45. Defendant Wyatt created a look alike interface to sell the AML data through the Cloned Website, which was hosted on AWS.

46. Defendant Wyatt also changed the DNS settings on ListShack's servers to re-direct all incoming traffic to the Cloned Website, by accessing the ExpertSRS (domain registration service) account information he had access through abusing his access to the email address joshua.stacy@gmail.com.

47. The Clone Website also used the exact same logos for ListShack and ListShack Pro (see Exhibit 2).

48. At the same time, around October 2019, Defendant Wyatt started representing to third parties on various internet fora that he is the "new owner" of ListShack (see Exhibit 3).

49. Soon thereafter, around October 2019, Defendant Wyatt acquired a merchant processing account for Lord Abbey (Acct_1FbO0FFmkFtj01Xn) with Stripe, an internet payment processing company used by AML.

50. In addition, Defendant Wyatt added Lord Abbey's Wells Fargo bank account to AML's Stripe account.

51. Defendant Wyatt made unauthorized copies of AML's proprietary software and databses, customer lists, and Trademarks, and stored such information on the Clone Website's servers.

52. Next, Defendant Wyatt changed the passwords for the AML's Stripe and web server accounts.

53. With the financial infrastructure and Clone Website in place, Defendant Wyatt started notifying ListShack's customers that he had released a "new interface" of ListShack, and listshackpro.com would eventually be "phasing[ed] out."

54. The FAQs section on the Clone Website stated: "Welcome to the new interface! We're still working on lots of enhancements, so if anything isn't working properly, send us a screen shot to help@listshack.support."

55. One such posting on insurance-forums.com states (see Exhibit 4).

> Today, we released the new interface of ListShack! You can access the new interface at listshack.support. Login to your account with the same email that you used to sign up for ListShack (the email we sent this message to) to search for and download leads. If you don't remember your password, just signup for a new account with the same email address. **Within the next 30 days, we'll attach your existing subscription to the new interface**. For the next 7 - 10 days, you'll still be able to access the old platform on listshackpro.com. Please take some time to login and download any previous data sets or invoices that you'd like to keep for you records. We'll sunset the old interface and transition the domain over to ListShackPro.com within the next few weeks, to give everyone the opportunity to download their data and invoices [emphasis added].
> Warmest Regards,
> Wyatt Grantham

56. When customer complaints regarding problems with ListShack's services came in, Defendant Wyatt would respond by encouraging those clients to register with the "new" platform, the Clone Website, since the "old site ListShackPro.com" was no longer viable (see Exhibit 5).

57. Defendant Wyatt eventually ended up transferring more than 600 active accounts and over 10,000 inactive accounts to Lord Abbey – a customer base that generated around $1.8 million since 2015 via Stripe, and an additional approximately $1.2 million in

aggregate between all other payment processors for ListShack.com, ListShackPro.com, and AffordableMarketingLists.com.

58. Defendant Wyatt sold the same data that ListShack sold to its customers through the Cloned Website, keeping the profits to himself and Defendant Catherine, and using those funds to pay Mr. Humphreys and Ms. Northcutt for maintaining the Clone Website.

59. Defendant Wyatt also sold ListShack "archives" on his Clone Website, which contained data that AML had never sold to its customers *en masse* before.

60. Having surreptitiously set up the financial infrastructure and diverted the Businesses customer base to his Cloned Website, Defendant Wyatt began the second phase of this carefully calculated sabotage.

## Phase II
### Sabotaging the Businesses Finances and Customer Goodwill

61. On December 19, 2019, Defendant Wyatt changed the email account associated with AML's Stripe account from Mr. Stacy's to wdgrantham+somecorp@gmail.com, an account owned and controlled solely by him.

62. This prevented Mr. Stacy from having any meaningful access to managing the financials of the Business, including but not limited to providing cancellations and refunds.

63. Next, Defendant Wyatt contacted various vendors and creditors of the Business, like First Home Bank, and represented to them that the Business is insolvent.

64. At the same time, Defendant Wyatt was actively transferring thousands of dollars from AML's Stripe account to Lord Abbey's bank account for his, and his wife's, personal and collective benefit. The unauthorized transfers to Lord Abbey from AML's bank

account include $5,000 on November 5, 2019, $18,500 on December 2, 2019, and $3,500 on January 31, 2020 (see Exhibit 6).

65. At the same time, Defendant Wyatt started representing to Mr. Stacy that the Business was in financial trouble.

66. Defendant Wyatt also refused to pay AML's Verizon phone bill, causing Mr. Stacy's phone line to be disconnected due to nonpayment. Consequently, Mr. Stacy lost access to his phone number. Mr. Stacy had used this exact phone number when he started his insurance career and frequently received calls from customers interested in purchasing products and services he offered.

67. Further, due to Defendant Wyatt's failure to pay the Businesses health insurance premiums, Mr. Stacy lost access to his health insurance and was unable to obtain critical medication.

68. Thus, Mr. Stacy ended up in the hospital due to severe mental health issues.

### The Fraudulent Attempted Purchase of AML

69. Seizing upon the opportunity presented by Mr. Stacy's severely compromised mental state, Defendant Wyatt attempted to legitimize his conversion of the Business by manufacturing a fraudulent "sale" of its assets to Lord Abbey.

70. Around January 17, 2020, Defendant Wyatt mailed Mr. Stacy a document titled *Asset Purchase Agreement* along with a check for $3,500.00, which attempted to defraud Plaintiffs out of substantially all the assets of the Business at a fraction of their market value.[10]

---

[10] Mr. Stacy had just been released after a 10-day detention period in Los Angeles and was under severe mental stress at this time.

71. Upon information and belief, this document was generated with the active material participation of Defendant Catherine.

72. At that time, AML's certificate of authority to conduct business in Virginia had expired (see Exhibit 7).

73. Furthermore, Defendant Wyatt knew that Mr. Stacy was unable to understand the nature and consequences of signing the *Asset Purchase Agreement* at that time due to his mental health condition.[11]

74. Prior to sending the document, Defendant Wyatt represented to Plaintiffs that since the Business was in financial trouble, he was trying to help Mr. Stacy out by purchasing the assets of the company.

75. Defendant Wyatt falsely assured Plaintiffs that he had already discussed the agreement with Mr. Michael Dvoren – an attorney who had previously represented AML, Some Corporation and Josh Stacy on unrelated matters – who had approved the same, and that signing the APA would "fix things."

76. Thus, late at night, around January 17, 2020, at a time when Mr. Stacy's mental condition had compromised his ability to understand the nature and consequences of his actions, Defendant Wyatt emailed him a copy of the APA in a fraudulent attempt to purchase a substantially profitable business for an unconscionable low value of a mere $3,500.

77. The APA was executed based in part on the fraudulent misrepresentations by Defendant Wyatt that, among other things, Mr. Dvoren had approved the APA.

---

[11] Around this time, a Los Angeles Superior Court judge had ruled that Mr. Stacy was temporarily mentally incompetent. It was later around February 27, 2020 that the LA County Superior Court determined that Mr. Stacy had regained his mental competence.

## Mounting Customer Complaints and Wyatt's Departure

78. By end of January 2020, Mr. Stacy had grown increasingly worried over the lack of any proper accountability by Defendant Wyatt in the management of the Business.

79. On December 20, 2019, AML's vendor, Answer Connect, contacted Mr. Stacy expressing concern about the "*multiple repeat and upset callers on your accounts*" (see Exhibit 8).

80. Defendants Wyatt, Catherine and Lord Abbey ignored customer complaints and requests for refunds on the original Stripe account for AML, to the point where Stripe suspended AML's business account for unusually high dispute rates.

81. During a phone conversation in mid-February 2020, Mr. Stacy terminated Defendant Wyatt and all his agents' involvement with the Business, including instructed Defendants to hand over and cease using all of Plaintiffs Intellectual Property.

82. During this conversation, Defendant Wyatt did a sudden volte-face by demanding, for the first time, retroactive compensation in the amount of $14,000 per month for alleged services rendered in managing the Business that were never discussed.

83. During this conversation, Defendant Wyatt disclosed for the first time that he had given himself $58,852.62 in "compensation" during his tenure at the Business.

84. During the conversation, Defendant Wyatt falsely promised Mr. Stacy that he and his agents would "turn over" the Business and IP, including the "merchant processing account" on March 1, 2020. However, Defendants continued to wrongfully exercise wrongful authority over the Plaintiffs Intellectual Property.

85. On February 29, 2020, weeks after Defendant Wyatt had falsely assured Mr. Stacy that the Business would be handed over, he brazenly attempted to prevent Mr. Stacy from

accessing AML's servers. His email to Atlantic Metro Communications, Inc., states in

relevant part:

> ......recently purchased the servers and hosting account from the existing account owner ... I'd like to remove Joshua Stacy from the account and only leave Wyatt Grantham" (see Exhibit 9).

86. Even more egregiously, Defendant Wyatt convinced the Atlantic Metro to "black hole" (that is, block) any access stemming from IP address 69.169.92.215, which hosted ListShack.com (see Exhibit 10).

87. Just a day earlier, on February 28, 2020, Defendant Wyatt had emailed Plaintiff JDS stating that "I'm good with just handing everything over that is there. I would just really appreciate something in writing that means we don't have to worry about this anymore." (see Exhibit 11).

88. In late February 2020, Mr. Stacy removed Defendant Wyatt from ListShack's Facebook page. However, Defendant Wyatt created a "List Shack Pro" Facebook page, which he continued to use to keep the Clone Website running for his personal gain.

89. Contrary to his earlier representations, Defendant Wyatt refused to hand over access of AML's Stripe account to Mr. Stacy.

### "Milk This For A Few More Months"

90. After Defendant Wyatt had promised Mr. Stacy to hand over the Business, he privately told Stephen Young, the developer that originally created the ListShack interface, that he could "still milk this [the Business] for a few more months."

91. As of February 17, 2020 Defendant Wyatt continued to misrepresent to the public on www.wyattgrantham.com that he was a founder of ListShack and responsible for

growing the company to annual revenues in excess of $1 million (see Exhibit 12: "*I also started up Listshack where I helped get things rolling to $1M+ annual revenue*").

92. As of March 2020, Defendant Wyatt continued to misrepresent to the public on his LinkedIn page that he was AML's "Chief Financial Officer" and "Strategic Advisor" from January 2014 through 2017 (see Exhibit 13).

93. On March 4, 2020, Plaintiffs sent a demand to Defendants to turn over their Intellectual Property and other assets, and to cease and desist from any further use of such Property (see Exhibit 14).

94. Defendants ignored such demand and continued to unlawfully use Plaintiffs Intellectual Property and other assets.

95. On or around March 18, 2020, Mr. Stacy finally regained access to AML's Stripe account, only to discover approximately $27,000 in unauthorized transfers to a bank account owned by Lord Abbey, LLC (see Exhibit 15).

96. On or around March 18, 2020, Mr. Stacy filed a complaint against Defendant Wyatt with the Fairfax County Financial Crimes.

97. The complaint went through a preliminary investigation and was forwarded over to detectives and assigned case number 2020-07000078 and the incident is currently being investigated.

98. On March 26, 2020, Plaintiffs directly contacted Defendant Catherine in an attempt to convince the Defendants to stop using the Clone Website to confuse and divert their customer base (see Exhibit 16).

99. Defendant Catherine responded by defending her husband's and Lord Abbey's misdeeds, and insisted that the fraudulent conversion of Plaintiffs Business, Intellectual Property and other assets was legitimate and justified.

100.    Defendant Catherine intentionally, knowingly and materially supported, assisted and abetted the other Defendants in converting the Businesses Intellectual Property and other assets, and in diverting its customer base to the Clone Website.

101.    Plaintiffs have been deluged by several customer complaints regarding services that were paid for, but not provided by ListShack, which severely undermines the Businesses customer goodwill (see Exhibit 17A-C).

102.    On April 17, 2020, Defendants had their attorney send a notice to Atlantic Metro Communications demanding that Mr. Stacy/AML be prohibited from accessing ListShack and ListShack Pro data hosted on AMC's servers because Lord Abbey allegedly "owns" those digital and physical assets. The email states in relevant part:

> As we have provided proof of Lord Abbey's ownership of the Transferred Assets referenced in my letter dated April 13, 2020, I need to know ASAP if Atlantic Metro has locked down the assets addressed in my letter dated April 13, 2020. In other words, Josh Stacy/Affordable Marketing Lists, LLC have not been allowed and are prohibited by Atlantic Metro from transferring the assets we've been discussing. To be clear, Atlantic Metro does not have Lord Abbey's consent to transfer, modify, or delete/destroy the Transferred Assets to any party other than directed by Lord Abbey.

103.    On February 29, 2020, Defendant Granthams collectively called Plaintiffs and left a voice mail, the translation of which is:

> Hey dude, this is wyatt, and I'm here with my wife cate, I just want to chat with you, i think um, i saw that you put up your site and everything, I really just want to turn everything over to you, happy to turn the money over, i real just, i really just want to get out and, what would really make me happy and would be helpful is if we could just sign something right,

> I think I talked to an attorney and they said just need to sign a release agreement just so that once I hand everything over, you know the money, and the site, and everything else, it just, we can just be done and we can both go our separate ways without having to worry about it. so. if you get a chance give me a call back and I'll send you an email as well. talk to you soon.

104. Defendants Wyatt and Catherine are liable for their own tortious acts, which exceeded the scope of their agency with Lord Abbey LLC, and because each acted for his/her own personal benefit.

105. Defendants Wyatt also had an 'independent personal stake' in fraudulently inducing Mr. Stacy to hand over the Business.

106. Defendant Catherine also had an independent personal stake in fraudulently suppressing all material information regarding the conversion of the Business and its Intellectual Property from Plaintiffs, and she benefitted from such fraudulent conduct personally.

107. Upon information and belief, Lord Abbey LLC is jointly owned by Defendants Wyatt and Catherine Grantham, and each defendant was further incentivized to defraud Plaintiffs for their financial gain.

108. Furthermore, Defendants Catherine and Wyatt each committed separate and independent willful torts which exceeded the scope of their agency with Defendant Lord Abbey.

109. The separate entity status of the Defendant Lord Abbey LLC should not shield fraud, evasion of obligations, circumvention of the law, and other such wrongdoings.

110. This abuse necessitates disregarding the corporate shield and holding Defendants Wyatt and Catherine Grantham liable personally.

111.     Plaintiff justifiably relied upon the representations by Defendants, as indicated

herein, incurred damages proximately caused by such representations.

## COUNT 1
## FRAUD IN THE INDUCEMENT
### (Against Defendant Wyatt Grantham)

112.     Plaintiffs incorporate and realleges all of the foregoing allegations as if restated

herein.

113.     By virtue of the facts described herein, Defendant Wyatt falsely represented to

the Plaintiffs that he would manage the Business for no compensation and to "help his

friend" during a time of need.

114.     These misrepresentations were material and designed to induce Plaintiffs into

handing over management of the Business to Defendant Wyatt so that he could

sabotage it and convert all corporate opportunities for his, and the other Defendants,

benefit.

115.     At the time Defendant Wyatt made these misrepresentations, he had no present

intent to perform[12].

116.     Defendant Wyatt's misrepresentations were made knowingly and intentionally

and were carefully calculated to deceive Plaintiffs into handing over management of

the Business.

117.     Defendant Wyatt intended for Plaintiffs to rely upon, and who in fact did rely,

on his material misrepresentations in an effort to induce them into handing over

control of the Business.

---

[12] "If an individual makes a promise, intending not to perform, his promise is a misrepresentation of present fact, and, if made to induce promisee to act to his detriment, is actionable as an actual fraud." Colonial Ford Truck Sales, Inc. v. Schneider, 228 Va. 671, 325 S.E.2d 91 (1985).

118.    Plaintiffs reasonably and justifiably relied on the misrepresentations and conduct of Defendant Wyatt and, in doing so, was induced into handing over control of the Business.

119.    But for the Defendant Wyatt's misrepresentations, Plaintiffs would not have entrusted control of the Business to him.

120.    As a result of Defendants fraudulent conduct, Plaintiffs have suffered damages.

121.    Defendant Wyatt's wrongful actions were intentional, egregious, willful and wanton and evidence a conscious disregard for the rights of Plaintiffs so as to justify the award of punitive damages.

## COUNT 2
## ACTUAL FRAUD
**(Against Defendants Wyatt Grantham, Catherine Grantham, and Lord Abbey LLC)**

122.    Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

123.    By virtue of the facts described herein, Defendants falsely represented, failed to disclose, and/or concealed material facts in connection with their management of the Business from the Plaintiffs.

124.    The misrepresentations, concealment and diversionary tactics of Defendants described herein were made knowingly and intentionally and were carefully calculated to deceive Plaintiffs to hand over the Business so that they could sabotage it and convert all corporate opportunities for their benefit.

125.    Defendants were under an independent legal duty not to defraud Plaintiffs (see Va. Code § 18.2-499; see also Va. Code § 18.2-152.4; 18 U.S.C.A § 1030(e)(6); Va. Code § 59.1-336 et seq.; 15 U.S.C § 1125(a), (c), and (d)).

126.    Defendants intended for Plaintiffs to rely upon, and who in fact did rely, on their material misrepresentations/suppression in an effort to take control of the Business, and divert its Intellectual Property, assets and corporate opportunities.

127.    Plaintiffs reasonably and justifiably relied on the misrepresentations and conduct of Defendants.

128.    But for Defendants repeated misrepresentations and concealment, Plaintiffs would not have handed over control of the Business and trusted their management.

129.    Defendants misrepresentations and wrongful acts and omissions as alleged herein, have directly and proximately caused Plaintiffs substantial damages.

130.    Defendants wrongful actions were intentional, egregious, willful and wanton and evidence a conscious disregard for the rights of Plaintiffs so as to justify the award of punitive damages.

## COUNT 3
## CONSTRUCTIVE FRAUD
**(Against Defendants Wyatt Grantham, Catherine Grantham, and Lord Abbey LLC)**

131.    Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

132.    By virtue of the facts described herein, Defendants falsely represented, failed to disclose, and/or concealed material facts in connection with his management of The Business.

133.    The misrepresentations, concealment and diversionary tactics of Defendants described herein were made innocently, negligently and/or recklessly.

134.     Defendants were under an independent legal duty not to defraud Plaintiffs (see Va. Code § 18.2-499; see also Va. Code § 18.2-152.4; 18 U.S.C.A § 1030(e)(6); Va. Code § 59.1-336 et seq.; 15 U.S.C § 1125(a), (c), and (d)).

135.     Defendants intended for Plaintiffs to rely upon, and who in fact did rely, on his material misrepresentations in an effort to take control of the Business and divert its assets and corporate opportunities.

136.     Plaintiffs reasonably and justifiably relied on the misrepresentations and conduct of Defendant Wyatt.

137.     But for Defendants repeated misrepresentations and concealment, Plaintiffs would not have handed over control of the Business and trusted his management.

138.     Defendants misrepresentations and wrongful acts and omissions as alleged herein, have directly and proximately caused Plaintiffs substantial damages.

139.     Defendants wrongful actions were intentional, egregious, willful and wanton and evidence a conscious disregard for the rights of Plaintiffs so as to justify the award of punitive damages.

## COUNT 4
## CIVIL CONSPIRACY TO DEFRAUD
**(Against Defendants Wyatt Grantham, Catherine Grantham, and Lord Abbey LLC)**

140.     Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

141.     By virtue of the facts described herein, the Defendants constructed and pursued their fraudulent scheme to intentionally commit the tortious acts complained about herein and utilized unlawful and fraudulent means to defraud Plaintiffs into handing over control of the Business, and then sabotaging it.

142.     Each of the Defendants took overt acts to further their fraudulent scheme, and
their actions were either improper standing alone, or facilitated the co-conspirators'
fraudulent acts and omissions.

143.     Each of the Defendants have benefited, either directly or indirectly, as a result
of the conspiracy.

144.     Defendants engaged in concerted tortious acts and/or omissions directed at,
among other things, the following:

- within a few months of assuming control of the Business, Defendants
  established a Clone Website to divert all incoming traffic and convert
  substantially all of the Business's proprietary data and customer lists, and
  severely undermined its customer good-will by sabotaging the Business;
- Defendants used Mr. Stacy's personal login information to access the
  business's web servers hosted by Atlantic Metro Communications Inc.,
  made unauthorized copies of the software, which he then used on the
  Clone Website;
- Defendant Catherine materially participated in the creation of a
  fraudulent document to convert all of the Businesses assets and
  Intellectual Property;
- Defendant Catherine was a direct financial beneficiary, and controller of
  the bank accounts of Lord Abbey that was used to divert AML's
  payments via Stripe.

145.     By virtue of the facts described herein, Defendants resorted to unlawful and
fraudulent means to sabotage the Business and divert its clientele to the Cloned
Website.

146.     In addition, Defendants Granthams' misrepresentations and/or concealment
described herein exceeded the scope of their respective agencies as co-owners of Lord
Abbey, and each Defendant had an independent personal stake in perpetrating and
continuing the scheme to defraud Plaintiffs.

147.    Furthermore, Defendants Catherine and Wyatt each committed independent willful torts for which they are personally liable.

148.    The Defendants' fraudulent and unlawful conspiracy has directly and proximately caused, and continues to cause, Plaintiffs damage.

149.    Defendants' fraudulent and unlawful act and/or omissions were intentional, egregious, willful and wanton and evidence a conscious disregard for the rights of Plaintiffs so as to justify the award of punitive damages.

## COUNT 5
## CONVERSION
**(Against Defendants Wyatt Grantham, Catherine Grantham, and Lord Abbey LLC)**

150.    Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

151.    Defendants engaged in a course of conduct designed to purposely conceal their taking and/or use of the Businesses Intellectual Property and assets, and thereby wrongfully exercised and assumed authority over Plaintiffs' IP and other assets, depriving Plaintiffs of the possession of the same and destroying their value.

152.    Plaintiffs were entitled to notice and immediate possession of the Business, IP and assets that were wrongfully converted by Defendants.

153.    Plaintiffs have been forced to expend attorney fees and costs and has otherwise been damaged by Defendants wrongful conversion of said Business, IP and other assets.

154.    Defendants conversion of Plaintiffs' Business, IP and other assets has resulted in damage to Plaintiffs as detailed below.

## COUNT 6
## CONSPIRACY TO CONVERT
**(Against Defendants Wyatt Grantham, Catherine Grantham, and Lord Abbey LLC)**

155.     Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

156.     Defendants acted in concert to assert dominion over Plaintiffs' Business, IP and assets for their own private use and control.

157.     By virtue of the facts described herein, Defendants resorted to unlawful and fraudulent means to exercise control over and convert Plaintiffs' Business, IP and assets.

158.     Defendants used the converted property in order to create the Cloned Website and divert Plaintiffs' clientele.

159.     Defendants conspiracy has directly and proximately caused, and continues to cause, Plaintiffs damage.

## COUNT 7
## BREACH OF FIDUCIARY DUTY OF LOYALTY
## MISAPPROPRIATION
**(Against Defendant Wyatt)**

160.     Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

161.     Defendant Wyatt owed to Plaintiffs a fiduciary duty of loyalty. Defendant Wyatt had a relationship of "special confidence" with Plaintiffs, where he was entrusted with control over the Business.

162.     During the course of his management of the Business, Defendant Wyatt became privy to the IP and trade secrets contained within.

163.    As the person who controlled the Business, Defendant had a duty to Plaintiffs to maintain the secrecy of Plaintiffs' Business, IP and other assets, and prevent their unauthorized use.

164.    Defendant Wyatt breached his fiduciary duty and duty of loyalty to Plaintiffs by misappropriating the Business, IP and other assets referenced above.

165.    By virtue of Defendant Wyatt's breach of his fiduciary duty and duty of loyalty to Plaintiffs, Plaintiffs have suffered damages as detailed herein.

## COUNT 8
## BREACH OF FIDUCIARY DUTY AND BREACH OF DUTY OF LOYALTY—COMPETITION WITH AML
### (Against Defendant Wyatt Grantham)

166.    Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

167.    Defendant Wyatt owed to Plaintiffs a fiduciary duty of loyalty. Defendant Wyatt had a relationship of "special confidence" with Plaintiffs, where he was entrusted with control over the Business.

168.    During his management of the Business, Defendant Wyatt became privy to the Businesses IP and trade secrets, and misappropriated those assets to compete with the Business, while simultaneously sabotaging its financial standing and customer good will.

169.    While still acting as the manager of the Business, Defendant Wyatt converted the Businesses IP, Trade Secrets and other assets refenced above for the express purpose of redirecting Plaintiffs' business to the Cloned Website. These actions were in direct competition with Plaintiffs; injured Plaintiffs' business relationships and

diverted business opportunities from Plaintiffs; and were undertaken clandestinely and with knowledge that they were wrongful.

170.     Defendant Wyatt, after allegedly promising Plaintiffs that he would relinquish control of the Business promptly created a Facebook page for ListShack.Support to continue to confuse the public.

171.     Both before and during his creation and operation of the Cloned Website Defendant Wyatt breached his fiduciary duty and duty of loyalty to Plaintiffs by misappropriating and disclosing confidential information though the Cloned Website for the purposes of using such information to compete with Plaintiffs.

172.     By virtue of Defendant Wyatt's breach of his fiduciary duty and breach of his duty of loyalty to Plaintiffs, Plaintiffs has suffered damages in the amount to be determined at trial.

## COUNT 9
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Against Defendants Catherine Grantham and Lord Abbey LLC)

173.     Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

174.     Defendant Wyatt owed a fiduciary duty to Plaintiffs.

175.     Defendants Catherine Grantham and Lord Abbey LLC were aware that Defendant Wyatt owed Plaintiffs a fiduciary duty.

176.     By virtue of the facts described herein, Defendants Catherine Grantham and Lord Abbey LLC provided substantial assistance to Defendants Wyatt in breaching his fiduciary duties by, among other things, aiding, abetting, participating in, encouraging, enticing, recruiting and/or assisting in their wrongful conduct, as alleged herein.

177. As a direct and proximate result of Defendant Catherine Grantham and Lord Abbey LLC assistance in these breaches of fiduciary duties, Plaintiffs suffered and incurred damages in an amount to be determined at trial.

## COUNT 10
### TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY AND/OR PROSPECTIVE ECONOMIC ADVANTAGE
### (Against Defendants Wyatt Grantham, Catherine Grantham, and Lord Abbey LLC)

178. Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

179. Plaintiffs have valid and continuing present and prospective business relationships with its clients with a probability of future economic benefit.

180. Defendants knew and continue to know of the existence of these valid business relationships and expectancies.

181. Defendants are now in possession of Plaintiffs' Intellectual Property, Trade Secrets, and customer lists.

182. Defendants have used these assets to solicit various clients of Plaintiffs to terminate or reduce their existing business relationships with Plaintiffs.

183. Defendants have done so with the specific intent to harm these existing business relationships and to erode Plaintiffs' goodwill with its clients.

184. Defendants actions were and are without privilege or justification and were engaged in through improper means, namely conversion of Plaintiffs Intellectual Property and other assets, violation of Plaintiffs Intellectual Property rights, and continued unauthorized use Plaintiffs data on the Clone Website. These improper means were independently tortious (see Counts 15, 16, 18, and 20)

185.     It is reasonably certain that absent Defendants intentional misconduct, Plaintiffs would have continued in its business relationships or realized its expectancy of future economic benefit.

186.     As a result of the Defendants' conduct, Plaintiffs' goodwill with its clients has been diminished, and the Defendants have diverted—and will divert—future business to themselves that would have gone to Plaintiffs.

187.     The foregoing conduct by Defendants constitutes a tortious interference with Plaintiffs' business relationships with its clients under Virginia common law.

188.     As a consequence of the foregoing, Plaintiffs has been and continues to be damaged by the Defendants' actions, and Plaintiffs seek judgment against Defendants, jointly and severally, for damages as detailed below.

## COUNT 11
## COMMON LAW BUSINESS CONSPIRACY
### (Against Defendants Wyatt Grantham, Catherine Grantham, and Lord Abbey LLC)

189.     Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

190.     By virtue of the facts described herein, Defendants conspired together to knowingly interfere with Plaintiffs business by directing clientele to Defendants' Cloned Website and deprive Plaintiffs of substantial compensation and revenue to which Plaintiff otherwise would be entitled.

191.     The Defendants conspired against Plaintiffs without justification, for their personal gain and enrichment and for the personal gain and enrichment of others. These acts of conspiracy both used and constituted improper and wrongful methods,

namely that they violated Plaintiffs Intellectual Property rights and constituted conversion of such assets.

192.     The concerted actions of the Defendants were willful, spiteful, filled with ill will, intentional, and legally malicious, and they evinced a conscious disregard for the rights of Plaintiff. These actions were aimed specifically and maliciously at causing damage to Plaintiffs and did cause Plaintiffs injury and damage.

193.     As a direct and proximate result of these actions, Plaintiff has incurred and will incur actual past, current and future financial losses, loss of reputation, and other pecuniary and non-pecuniary damages as detailed below and in an amount to be proved at trial.

194.     Due to the outrageous character and severity of the Defendants' conduct, Plaintiff is also entitled to recover punitive damages against these Defendants.

## COUNT 12
## STATUATORY BUSINESS CONSPIRACY — VA. CODE § 18.2-499(B)
### (Against Defendants Wyatt Grantham, Catherine Grantham, Lord Abbey LLC)

195.     Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

196.     Upon information and belief, Defendants, by virtue of the conduct described herein, procured the participation, cooperation, agreement, or other assistance of one or more persons to enter into a combination, association, agreement, and/or mutual understanding for the purpose of willfully and maliciously injuring Plaintiffs in their reputation, trade, business, or profession.

197.    Upon information and belief, Defendants undertook these actions with full knowledge, intentionally, purposefully, willfully, maliciously, and without lawful justification.

198.    By virtue of Defendants conspiracy in violation of sections 18.2-499(B) and 18.2-500 of the Virginia Code, Plaintiffs has suffered injury to their trade, business, profession, and reputation, including lost past and future commissions in connection with the diverting of Plaintiffs' clientele to the Cloned Website, the removal of Mr. Stacy in business accounts, and the Defendants malicious actions to confuse the public.

199.    Defendants malicious and intentional conduct warrants the imposition of treble damages under Va. Code 18.2-500 as well as punitive damages.

### COUNT 13
### COMPUTER TRESPASS UNDER THE VIRGINIA COMPUTER CRIMES ACT ("VCCA")
### (Against Defendants Wyatt Grantham, Catherine Grantham, and Lord Abbey LLC)

200.    Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

201.    The Defendants committed a computer trespass by unlawfully accessing and using the web data servers of Plaintiffs to make unauthorized copies of the proprietary software and other data, including customer lists, and also converted other IP, all in violation of Virginia Code Section 18.2-152.4.

202.    Plaintiffs were damaged by such actions of the Defendants.

203.    Under Virginia Code Section 18.2-152.12, Plaintiffs are entitled to recover damages, which would include the costs of retaining computer forensics experts to trace the extent of the theft of the Intellectual Property and other data, the extent of

information that was impaired or destroyed, and what information was stored on Defendants servers and computers. In addition, Plaintiffs pray for the damages detailed below.

## COUNT 14
### UNAUTHORIZED ACCESS OF PROTECTED COMPUTER SYSTEMS--VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
**(Against Defendants Wyatt Grantham, Catherine Grantham, and Lord Abbey LLC)**

204. Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

205. Since on or about November 2019, Defendants have willfully infringed upon Plaintiffs' rights in the IP and Trade Secrets and have converted Plaintiffs proprietary software code.

206. Defendants engaged in, and knowingly facilitated and encouraged others to engage in, unlawful business practices involving, inter alia, the unauthorized and deceptive creation of the Cloned Website and List Shack Pro Facebook page.

207. Defendants mismanaged and sabotaged Plaintiffs with the knowledge and intent to create the Cloned Website and divert clientele to the financial benefit of Defendants.

208. Defendant Wyatt obtained control of the Business by false pretenses, and by fraudulently inducing Plaintiffs to hand over management of the Business to Defendants.

209. Instead, as soon as Defendant Wyatt gained control over the Business, he along with his co-Defendants Catherine and Lord Abbey created the Cloned Website and diverted the clientele to themselves.

210. Because Defendants sabotaged the Business using unlawful and tortious means, Defendants' access of Plaintiffs' web servers to convert proprietary software and steal the Businesses IP was not authorized in any way, or exceeded the scope of the authority that was given to Defendant Wyatt.

211. By continuing to operate the Cloned Website, Defendants are also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access and abuse of Plaintiffs' protected IP and Trade Secrets that were converted from AML's web servers.

212. Defendants' conduct also exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act (18 U.S.C.A. § 1030(e)(6)), in that Defendant Wyatt was given a limited authorization to temporarily manage the Business. However, Defendant Wyatt abused such authorization and obtained AML's web server passwords from Dan Emerick under false pretenses, unlawfully accessed AML's web servers hosted by Atlantic Metro Communications, and with the help of Defendants Catherine and Lord Abbey, converted all IP belonging to the Plaintiffs for the explicit purpose of establishing a Clone Website to compete with Plaintiffs and sell customers the same data that Plaintiff sold through ListShack. At no point were Defendants Catherine and/or Lord Abbey authorized to access Plaintiffs web servers or any IP in any capacity whatsoever. Thus, Defendants' access of Plaintiffs web servers and computer network exceeded authorized access.

213. Plaintiffs' protected computer systems/webhosting servers are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and

Abuse Act (18 U.S.C.A. § 1030(e)(2)(B)) because they are used in interstate commerce and communications.

214.   Defendants' activities substantially affect interstate commerce and communication in that ListShack and ListShack Pro and the Cloned Website are trafficked over the internet, throughout the United States, and around the world.

215.   By virtue of the facts described herein, Defendants' unauthorized access of Plaintiffs' protected computer systems/web hosting servers has caused and will continue to cause Plaintiffs to suffer injury, with "damages" and "losses" as those terms are defined in Sections 1030(e)(8) and 1030(e)(11) of the Computer Fraud and Abuse Act (18 U.S.C.A. § 1030(e)(8), 18 U.S.C.A. § 1030(e)(11)), respectively, substantially in excess of $5,000 over a one-year period.

216.   Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C.A. § 1030(a)(5)(C)).

217.   Defendants' conduct is intentional, malicious, and willful.

218.   Pursuant to 18 U.S.C.A. § 1030(g), Plaintiffs is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief for the reasons identified above, and as detailed below. Defendants' conduct involves at least one of the factors identified in 18 U.S.C.A. § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Plaintiffs and its customers as a result of Defendants.

## COUNT 15
## MISAPPROPRIATION OF TRADE SECRETS (VA. CODE § 59.1-336 et seq)
### (Against Defendants Wyatt Grantham, Catherine Grantham, and Lord Abbey LLC)

219.     Plaintiffs incorporate and reallege all of the foregoing allegations as if restated herein.

220.     Plaintiffs are the owner of trade secrets as defined under the Virginia Uniform Trade Secrets Act consisting of commercially valuable IP, including customer lists, proprietary software, and accounting information related to the Business ("Trade Secrets" or "Confidential Documents").

221.     The Defendant has misappropriated and misused to its own ends and beneficial purposes, Plaintiffs Trade Secrets, by improper means, specifically, theft, misrepresentation, use of a computer network without authority and breach of a duty to maintain secrecy through espionage and electronic or other means.

222.     The Trade Secrets referenced above contain information that includes a formula, pattern, software code, data, algorithm, compilation, program, device, method, technique, and/or process related to ListShack, ListShack Pro and the Business.

223.     The Trade Secrets referenced above are not generally known to other persons or entities.

224.     The Trade Secrets referenced above are not readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

225.     At the time that the Defendant misappropriated Plaintiffs Trade Secrets Defendant knew that the misappropriation of said Trade Secrets were acquired by improper means.

226.    The Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

227.    Plaintiffs have made reasonable efforts to maintain the secrecy and confidentiality of said Trade Secrets.

228.    As the person entrusted with temporarily managing and taking care of the Business, Defendant Wyatt Grantham had a duty to maintain the secrecy of said Trade Secrets, limit their use, and prevent their unauthorized acquisition, use, and disclosure to others.

229.    Instead, Defendant Wyatt Grantham acquired the Trade Secrets by theft, misrepresentation, and/or breach of duty to maintain their secrecy or with knowledge or reason to know that said acquisition was by theft, misrepresentation, and/or breach of duty to maintain their secrecy.

230.    Next, Defendant Wyatt Grantham disclosed the Trade Secrets to Defendants Catherine Lily Grantham and Lord Abbey without the express or implied consent of Plaintiffs.

231.    Defendant Catherine acquired the Trade Secrets by conspiring with, and actively and materially assisting, Defendants Wyatt and Lord Abbey in effectuating the theft, misrepresentation, and/or breach of fiduciary duty to maintain their secrecy or with knowledge or reason to know that said acquisition was by theft, misrepresentation, and/or breach of duty to maintain their secrecy.

232.    At the time that Defendant Catherine Lily Grantham acquired access to Plaintiffs Trade Secrets, she knew that the Trade Secrets were acquired by improper

means. In fact, even after she was explicitly informed by Mr. Stacy, Defendant Catherine continued to make unlawful use of Plaintiffs IP and Trade Secrets.

233.     Defendant Catherine Lily Grantham and Lord Abbey have and continued to use said Trade Secrets, and proprietary information without the consent and/or authorization of Plaintiffs.

234.     Defendant Wyatt Grantham's breaches of the terms of the Virginia Trade Secrets Act directly and proximately caused and continues to cause Plaintiffs damages in an amount in excess of $1 million, and entitle Plaintiffs to recover compensatory damages, punitive damages, preliminary and permanent injunctive relief, pre-and post-judgment interest, and its reasonable costs and expenses including its attorney's fees.

235.     Defendants Catherine Lily Grantham's breaches of the terms of the Virginia Trade Secrets Act directly and proximately caused and continues to cause Plaintiffs damages in an amount in excess of $1.1 million, and entitle Plaintiffs to recover compensatory damages, punitive damages, preliminary and permanent injunctive relief, pre-and post-judgment interest, and its reasonable costs and expenses including its attorney's fees.

236.     Defendants' unjust enrichment, to date, as a result of their unjust taking, use, retention, and/or disclosure of said Trade Secrets has caused substantial losses to Plaintiffs, the full extent of which is yet to be calculated.

## COUNT 16
## COMMON LAW TRADEMARK INFRINGEMENT
(Against Defendants Wyatt Grantham, Catherine Grantham, and Lord Abbey LLC)

237. Plaintiffs incorporate and reallege all of the foregoing allegations as if restated herein.

238. Beginning in or about 2013, when Plaintiff JDS started the business on the internet, registering the domains www.listshack.com www.listshackpro.com and using the trademark "LISTSHACK" and subsequently "LISTSHACK PRO", (collectively "Trademarks"), Plaintiff JDS became the common law owner of the Trademarks having been the first to use the trademark in in interstate commerce for use in selling business tools for market development and the common law owner of the trade dress.

239. Plaintiffs Trademarks have acquired secondary meaning and distinctiveness within the relevant market of customers seeking the services of Plaintiffs and is therefore entitled to protection under the common law.

240. As a result of the successful sales of its products under the Trademarks, the customer base grew steadily over the past seven years and commands a strong customer base, until the Defendants operation to steal the business from the Plaintiff.

241. Notwithstanding the efforts of Defendant to make use of Plaintiff's intellectual property rights in the Trademarks and associated trade dress, Plaintiff continues to be the owner of the Trademarks and associated trade dress as Plaintiffs have used said Trademarks in connection with its services in interstate and international commerce.

242. Defendant's Clone Website was a duplicate of the original design and functions of ListShack and ListShack Pro, of Plaintiff JDS's websites and, once operational, all of Plaintiff JDS's business income and customers were transferred to the Cloned Website and accounts created by Defendant. Defendants ignored customer complaints and requests for refunds on the original Stripe account for Affordable Marketing Lists

and neglected it to the point where Stripe suspended the account for unusually high dispute rates.

243.    By use of the trademark "LISTSHACK", on Defendants Clone Website, Defendants intentionally and maliciously deceived and continue to deceive the general public and Plaintiffs former customers into believing that Plaintiffs' goods and services were under the control and supervision of Defendants, thus depriving Plaintiff, of the benefit of the goodwill and income attached to his business products.

244.    Defendants have been and are now using Plaintiff JDS's mark, which appears on the all Defendant's clone website pages and advertisements, in connection with the development of customer marketing services.

245.    Continued use of Plaintiffs Trademarks and trade dress constitute willful trademark infringement under Virginia common law.

246.    Continued use of Plaintiffs trademark and trade dress has caused not only a likelihood of confusion in the marketplace as to source of origin, but has caused actual confusion among Plaintiffs customers as to Plaintiffs involvement with the Clone Website.

247.    As a result of said infringement, the public has been and continues to be defrauded into believing that the services marketed under the Defendants' Cloned Website are associated with Plaintiff's services.

248.    As a direct and proximate result of Defendants infringement, Plaintiffs have been, and is likely to continue to be substantially injured, including harm to its goodwill and reputation and loss of revenues and profits.

249.    On March 4, 2020, Plaintiffs issued a list of demands to Defendants, including the demand for an accounting of the profits made since their takeover of Plaintiffs Intellectual Property.

250.    The exact amount of profits made by Defendants as a result of their infringement of Plaintiffs IP, including Trademark and trade dress is unknown to Plaintiffs, and cannot be ascertained without an accounting.

251.    Unless the injunction sought in this action is granted, Defendants will continue to infringe on Plaintiffs trademark and cause irreparable injury to Plaintiffs, from loss of profits and deprivation of the benefit of the good will that is attached to Plaintiffs trademark.

252.    Plaintiffs have no plain, speedy or adequate remedy at law.

## COUNT 17
## FALSE DESIGNATION OF ORIGIN AND DILUTION BY TARNISHMENT -
## 15 U.S.C. § 1125(a) and (c)
## (Against Defendants Wyatt Grantham, Catherine Grantham, and Lord Abbey LLC)

253.    Plaintiffs incorporate and reallege all of the foregoing allegations as if restated herein.

254.    After gaining access to Plaintiffs website designs and the associated computer code, Defendants created a Clone Website.

255.    Defendants falsely advertised this Clone Website as being part of the Defendants' business and as a new website that was "phasing out" ListShack (Plaintiffs website).

256.    Defendant falsely advertised on his Clone Website that he was the founder of ListShack.com and ListShackPro.com.

257.   The confusion of the customers was apparent as they were told not to access their accounts on Plaintiff's website, but to sign onto and use the Cloned Website. Furthermore, Defendants placed the logo bearing the words "ListShackPro.com" on the website "ListShack.support" which would mean if a customer were to look only at the website, not at the URL, they would believe they were at ListShackPro.com.

258.   Defendants were able to transfer more than 600 active accounts to their new Cloned Website, depriving Plaintiff of said customer base and income.

259.   Therefore, Defendants have, in connection with the goods and services of Plaintiffs, used Plaintiffs name and IP, including trademarks, trade dress and computer code claiming falsely that the Cloned Website was the new interface of ListShack, thereby falsely designating the clone as Plaintiffs website, www.ListShack.com and www.ListShackPro.com.

260.   Furthermore, the false designation of origin has caused confusion among the public and Plaintiffs customers as to which website is Plaintiffs and convinced them to pay Defendant for services instead of Plaintiff.

261.   Defendant's actions have substantially diluted the value of Plaintiffs trademarks, trade dress and good will of his business by causing harm to Plaintiffs customers, tarnishing the Plaintiffs Trademarks.

262.   Pursuant to 15 U.S.C. Sec 1125(a)(1) Defendants use of a clone website to mislead the public as to the designation of origin of said website and containing false and misleading assertions as to a connection with Plaintiffs original website, subjects Defendant to liability for the substantial damages caused Plaintiff by such actions.

263.     Pursuant to 15 U.S.C. Sec 1125 (c)(1), Plaintiffs are entitled to injunctive relief as Defendant has diluted by tarnishment the Plaintiff's trademark and trade dress, having acquired inherent distinctiveness by use in interstate commerce for over seven years and having served more than 18,000 customers.

264.     Pursuant to 15 U.S.C. Sec 1125 (5) Plaintiff is also entitled to additional remedies under 15 U.S.C. Sec 1117 (a) including triple damages and attorneys' fees, plus all other remedies detailed below.

## COUNT 18
## CYBERPIRACY - 15 U.S.C. § 1125(d)
### (Against Defendants Wyatt Grantham, Catherine Grantham, Lord Abbey LLC and ListShack.Support)

265.     Plaintiffs incorporate and reallege all of the foregoing allegations as if restated herein.

266.     Pursuant to 15 U.S.C. 1125(d), a person shall be liable in a civil action by the owner of a mark if that person has a bad faith intent to profit from that mark, registers, traffics in or uses a domain name that is identical or confusingly similar to that mark.

267.     Within one month of having been appointed Chief Financial Officer of Plaintiff's company, Defendant registered his Clone Website, and launched the same using the exact web designs of Plaintiff's original designs.

268.     While Defendants prepared to launch the Clone Website, they began advertising to Plaintiffs customers that a new website was being developed to replace the original.

269.     The Clone Website was created with the bad faith intent of creating a false designation of origin, and to lead the Plaintiffs customers and general public into

believing that their Clone Website was the website owned by Plaintiffs, www. ListShack.com.

270.   The false advertising and efforts to shut down Plaintiff's website, to lock Plaintiff out of the accounts that handled payments to the website and change passwords were all done to allow Defendant to receive all profits from the company and deprive Plaintiff of same.

271.   In determining whether a person has a bad faith intent, the court may consider that person's intent to divert customers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark for commercial gain. See 15 U.S.C. 1125 §(d)(1)(B)(i)((V).

272.   The Clone Website is in form and function a duplicate of Plaintiff's website www. ListShack.com and ListShackPro.com

273.   Pursuant to 15 U.S.C. Sec 1125 (c)(1), Plaintiffs are entitled to injunctive relief as Defendant has diluted by tarnishment the Plaintiffs trademark and trade dress, having acquired inherent distinctiveness by use in interstate commerce for over 7 years and having served thousands of customers.

274.   Pursuant to 15 U.S.C. Sec 1125 (d)(2)(D)(i), the Plaintiffs are entitled to ask the Court for an order for the forfeiture or cancellation of the domain name or transfer of the domain name to Plaintiffs.

## COUNT 19
## UNFAIR COMPETITION
### (Against Defendants Wyatt Grantham, Catherine Grantham, Lord Abbey LLC)

275.   Plaintiffs incorporate and reallege all of the foregoing allegations as if restated herein.

276.     Unfair Competition is defined in Virginia case law as "passing off one's goods as the goods of another, or in otherwise securing patronage that should go to another, by false representations that lead the patron to believe that he is patronizing the other person" (see Benj. T. Crump Co. v. J. L. Lindsay, 130 Va. 144, 150, 107 S.E. 679, 680 (1921)).

277.     "The test for common law unfair competition under Virginia law is essentially the same as that for trademark infringement and unfair competition under the Lanham Act because both address the likelihood of confusion as to the source of the goods or services involved." See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 930 n. 10 (4th Cir. 1995); See also Lamparello v. Falwell, 420 F.3d 309, 312 C.A.4 (Va.) 2005).

278.     Plaintiffs Trademarks have, by continued use in interstate commerce for the past several years, acquired secondary meaning in the relevant market of customers seeking Plaintiffs' services associated with those Trademarks and trade dress and is therefore entitled to protection under common law, federal copyright law and the Virginia Uniform Trade Secret Act, Va. Code § 59.1-336.[13]

279.     Defendants unauthorized use of Plaintiffs IP, Trade Secrets and other assets in connection with its operation of the Clone Website from November 2019, therein constitutes a false designation of origin and a false representation that the Defendant's Clone Website was sponsored by, approved by, or otherwise associated with Plaintiffs.

---

[13] "To constitute unfair competition in respect to a trade-name, two elements must be present. The name must have acquired a secondary meaning or significance that identifies the plaintiff, and the defendant must have unfairly used the name or a simulation of it, to the prejudice of the plaintiff's interests." Rosso & Mastracco, Inc. v. Giant Food Shopping Ctr. of Va., Inc., 200 Va. 159, 164–65, 104 S.E.2d 776, 780 (1958).

280.    Defendants by their unauthorized appropriation and use of Plaintiff's Intellectual Property, have engaged, and are continuing to engage in acts of wrongful deception of the purchasing public, wrongful designation as to the source and sponsorship of goods, wrongful deprivation of Plaintiffs' good name and reputation, and the wrongful deprivation of Plaintiffs' right to public recognition and credit as creator and owner of the Intellectual Property.

281.    Plaintiffs' action concerning Defendants' unfair competition is related to Plaintiffs' "substantial" theft of trade secrets and copyright infringement action since these actions are based on the same operative facts.

282.    Beginning on or about November 2019 and continuously after that date, Defendants have been conducting business using Plaintiffs Trademarks, misappropriated trade secrets, trade dress, customer lists and product databases, and all of Plaintiffs Intellectual Property resulting in consumer confusion as to the source of the origin of Plaintiffs Intellectual Property.

283.    These acts of unfair competition and unfair trade practices against Plaintiffs have caused the following damages: Loss of income, and substantial damage to the goodwill of Plaintiff's Mark and business due to Defendants poor service to customers and resulting degradation of Plaintiffs' reputation in the relevant market.

284.    Defendant has denied Plaintiff any control or management of Defendants Clone Website and has denied Plaintiff any access to the accounts and customers that were diverted to Defendants Cloned Websites all the while maintaining the pretext of being Plaintiffs website.

285.     Although Plaintiffs created the trademarks, trade secrets, trade dress and customer base for Plaintiffs business, Defendants' theft and misrepresentation to the public constitute additional acts of unfair trade practices and unfair competition, all to the Plaintiff's damage.

286.     Consequently, Plaintiffs are entitled to damages as detailed below,  and an injunction pursuant to Va. Code 59.1-337[14] as the Defendants have been and continue to misappropriate Plaintiffs identity and business services, trademarks, trade dress, trade secrets, customer lists and proprietary software all with false designation of origin and without any compensation to Plaintiffs .

## COUNT 20
## COPYRIGHT INFRINGEMENT
### (Against Defendants Wyatt Grantham, Catherine Grantham, Lord Abbey LLC)

287.     Plaintiffs incorporate and reallege all of the foregoing allegations as if restated herein.

288.      Plaintiffs are the owners of enforceable and protectable copyrights in an original works of authorship fixed in a tangible medium of expression pursuant to the federal Copyright Act of 1976, as amended, 17 U.S.C.A. §§ 101 et seq., specifically, proprietary computer software.

---

[14] Va. Code § 59.1-337. "Injunctive relief. A. Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation. B. In exceptional circumstances, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time for which use could have been prohibited. Exceptional circumstances include, but are not limited to, a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation that renders a prohibitive injunction inequitable. C. In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order." Virginia Code Sec. 59.1-337 Injunctive relief (Virginia Statutes (2019 Edition))

289.     In 2013, Plaintiff JDS hired a developer, Steven Young, to create an original software program and website designs for his business. On January 22, 2014, Mr. Young completed the code that he was hired to produce by Mr. Stacy (owner of said code), and was paid as agreed for performance of such work.

290.     Said Program was fixed in a tangible medium in the form of computer-based program source code on or about January 2014.

291.     Defendants have been using the Clone Website since 2019, which uses the proprietary software code that Defendant Wyatt converted from Plaintiffs servers without authorization.

292.     Beginning in 2014, Plaintiffs software code generated and sold marketing lists to the general public through subscriptions to Plaintiff's website www.listshack.com and subsequently on Plaintiff's website www.listshackpro.com.

293.     As Defendant Wyatt had been appointed Chief Financial Officer in September of 2019, Defendant had access to all proprietary information and Intellectual Property belonging to Plaintiffs, including access to the servers that housed the entirety of Plaintiffs IP, including but not limited to, business and consumer databases spanning across its seven years of existence..

294.     While managing the Business, Defendant Wyatt copied all the original art from ListShack.com and ListShackPro.com to pair with a substandard approximation of the original interface on the Clone Website, including the code for the software, and began using it on his own Clone Website without permission, consent or license from Plaintiffs and without modification to said code.

295.    The code underlying the IP had been developed by Plaintiffs, and was copied by Defendant Wyatt without authorization and used for Defendants Lord Abbey, Catherin and Waytt's personal benefit on their Cloned Website.

296.    Plaintiff is the current owner of the entire right, title and interest in the IP, and the copyright to software code and program, it's derivatives, enhancements and iterations.

297.    Defendants knowingly infringed Plaintiffs' copyrights by publishing and using the Program in their own Cloned Website.

298.    By reproducing, publishing, offering for sale, distributing and selling the information produced by the Program, defendants have infringed and are continuing to infringe Plaintiffs' copyrights throughout the United States without the consent of Plaintiffs and in complete disregard of Plaintiffs' exclusive rights.

299.    The unauthorized and infringing use by Defendants of the IP will, unless enjoined, cause irreparable harm, damage and injury to Plaintiffs, in that Plaintiffs' reputations have been damaged as a result of the failure of Defendants to properly credit Plaintiffs as the copyright owner of such IP.

300.    Plaintiffs have been, and will continue to be, irreparably harmed, damaged and injured as a result of defendants' infringements and threatened infringements of Plaintiffs' copyrights. In addition, defendants have unlawfully and wrongfully derived, and will continue to derive, income and profits from their infringing acts.

301.    Since the date of first publication of the code, around February 2014 Plaintiffs have complied with all pertinent provisions of the Federal Copyright Act and all other laws governing copyright with respect to the IP.

54

295.    The code underlying the IP had been developed by Plaintiffs, and was copied by Defendant Wyatt without authorization and used for Defendants Lord Abbey, Catherin and Waytt's personal benefit on their Cloned Website.

296.    Plaintiff is the current owner of the entire right, title and interest in the IP, and the copyright to software code and program, it's derivatives, enhancements and iterations.

297.    Defendants knowingly infringed Plaintiffs' copyrights by publishing and using the Program in their own Cloned Website.

298.    By reproducing, publishing, offering for sale, distributing and selling the information produced by the Program, defendants have infringed and are continuing to infringe Plaintiffs' copyrights throughout the United States without the consent of Plaintiffs and in complete disregard of Plaintiffs' exclusive rights.

299.    The unauthorized and infringing use by Defendants of the IP will, unless enjoined, cause irreparable harm, damage and injury to Plaintiffs, in that Plaintiffs' reputations have been damaged as a result of the failure of Defendants to properly credit Plaintiffs as the copyright owner of such IP.

300.    Plaintiffs have been, and will continue to be, irreparably harmed, damaged and injured as a result of defendants' infringements and threatened infringements of Plaintiffs' copyrights. In addition, defendants have unlawfully and wrongfully derived, and will continue to derive, income and profits from their infringing acts.

301.    Since the date of first publication of the code, around February 2014 Plaintiffs have complied with all pertinent provisions of the Federal Copyright Act and all other laws governing copyright with respect to the IP.

302.    Great and irreparable harm, damage and injury will result to Plaintiffs unless all wrongful and illegal acts of Defendants are immediately enjoined.

303.    Plaintiffs provided Defendants with actual notice of defendants' wrongful claim to, and receipt of, fees paid in connection with the use of the IP. Even though defendant received that notice, it has failed and refused, and still fails and refuses, to case making unauthorized use of the proprietary software code and other IP of the Plaintiffs.

304.    At no time was the Defendants use of the IP for the purpose of criticism, comment, news reporting or teaching, but solely to profit from the efforts of Plaintiffs.

305.    At no time have Plaintiff ceased use of the IP or surrendered ownership in its rights, nor did Plaintiffs intend its grant of a limited access to the IP to allow Defendants to retain or use it for their own personal benefit.

306.    At no time did Plaintiffs intend to provide a license to Defendants to use the IP for their own benefit, nor was any such license ever expressly provided.

## COUNT 21
## FALSE ADVERTISING
## (Against Defendants Wyatt Grantham, Catherine Grantham, Lord Abbey LLC)

307.    Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

308.    Under Virginia Code § 18.2-216, a false advertisement is defined as "any promise, assertion, representation or statement of fact which is untrue, deceptive or misleading…."

309.     Virginia Code § 18.2-216 provides a remedy by civil action, through Virginia

Code 59.1-68.3, to any person who suffers a loss as a result of violation of this statute,

and also provides for the recovery of attorney fees.[15]

310.     As part of their effort to generate business through the Cloned Website, the

Defendants made, published, disseminated, circulated and placed before the public

written advertising materials containing promises, assertions, representations and/or

purported statements of fact regarding ListShack and ListShackPro's ownership

information and status.

311.     Included in these published advertising materials on Defendants Clone Website

were statements that the information deemed in the advertising was deemed accurate.

312.     The promises, assertions, representations and/or purported statements of fact

in the written advertising materials were untrue, deceptive and/or misleading, in

violation of Virginia Code § 18.2-216.

313.     Virginia Code § 59.1-68.3 authorizes Plaintiffs to bring a claim against

Defendants for violation of section 18.2-216.

314.     As a result of Defendants violation of Virginia Code § 18.2-216, Plaintiffs have

suffered damages, in the exact amount to be proven at trial.

## COUNT 22
## PRE-JUDGMENT SEIZURE
**(Against Defendants Wyatt Grantham, Catherine Grantham, Lord Abbey LLC and
Wells Fargo Bank, NA)**

---

[15] § 59.1-68.3. Action for damages or penalty for violation of Article 8, Chapter 6 of Title 18.2 or Chapter 2.1 of Title 59.1; attorney's fees. Any person who suffers loss as the result of a violation of Article 8 (§ 18.2-214 et seq.), Chapter 6 of Title 18.2 or Chapter 2.1 (§ 59.1-21.1 et seq.) of Title 59.1 shall be entitled to bring an individual action to recover damages, or $100, whichever is greater. […] in addition to the damages recovered by the aggrieved party, such person may be awarded reasonable attorney's fees.

315.    Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

316.    Pursuant to Va. Code Ann. § 8.01-533 and § 8.01-534 *et seq.*, Plaintiffs may seek pre-judgment seizure over the Defendants bank accounts.

317.    Defendants have and continue to receive profits generated from their conversion of Plaintiffs IP via the Cloned Website.

318.    Upon information and belief, Defendants may have already used a portion of the profits by paying independent contractors, paying vendors, and other expenses for their own benefit.

319.    Upon information and belief, Defendants may be spending or intending to spend the profits with the intent to hinder, delay or continue to defraud Plaintiffs.

320.    Upon information and belief, the profits have been and continues to be disposed of in violation of the rights and obligations to Plaintiffs, and Plaintiffs will be materially damaged if the profits are permitted to remain in possession of Defendants.

321.    Upon information and belief, Defendants maintain one or more bank accounts with Wells Fargo and/or Stripe.

   a.   Wells Fargo Bank Account No. Ending In 6382 (For Lord Abbey)
   b.   Wells Fargo Bank Account # For Wyatt Grantham
   c.   Wells Fargo Bank Account # For Catherine Grantham
   d.   Stripe Account No. Acct_1fbo0ffmkftj01xn (For Lord Abbey/Listshack.Support)

322.    Plaintiffs seek an immediate attachment on the money held by Wells Fargo and/or Stripe for the benefit of Defendants.

323.    Plaintiffs requests that Wells Fargo and/or Stripe be ordered to immediately freeze the bank accounts of Defendants during the pendency of this action, and that Defendants be ordered to account for the profits, and for any property they purchased with the profits that they hold outside of their accounts at these banks.

324.    Plaintiffs stand ready to pay the bond required for such action as ordered by the Court.

## COUNT 23
## BREACH OF CONTRACT
### (Alternative to Count 1)
### (Against Defendant Wyatt)

325.    Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

326.    The agreement between Plaintiffs and Defendant Wyatt was a valid and enforceable agreement.

327.    By virtue of the facts described herein, Defendant Wyatt materially breached such agreement.

328.    The IP referenced above were misappropriated by Defendant Wyatt during and after the course of his management of the Business. The IP contains information that relates or pertains to Plaintiffs, its business, and/or its customers, and is proprietary in nature.

329.    As manager of the Business entrusted with its temporary control, Defendant Wyatt had a contractual duty to maintain the secrecy of said IP, limit their use, and prevent their unauthorized disclosure to others.

330.     Defendant Wyatt's taking, retention, disclosure, and use of said IP is a breach

of his contractual duties and has damaged Plaintiffs in the amount to be determined at

trial.

## COUNT 24
## UNJUST ENRICHMENT
### (Alternative to Breach of Contract)
### (Against Defendants Wyatt Grantham, Catherine Grantham, Lord Abbey LLC)

331.     Plaintiffs incorporate and realleges all of the foregoing allegations as if restated

herein.

332.     The foregoing conduct of Defendants has resulted in them being unjustly

enriched by possessing and using Plaintiffs' confidential documents and retaining the

benefits of such wrongful conduct at the expense and to the detriment of Plaintiffs.

333.     The foregoing conduct has resulted in Defendants being unjustly enriched by

misappropriating Plaintiffs' business relationships with its clients and intentionally

misappropriating revenues and profits that Plaintiffs would otherwise have received

from those clients.

334.     As a consequence of the foregoing, Plaintiffs has suffered damages and will

continue to suffer damages in an amount to be determined at trial.

## COUNT 25
## CONSTRUCTIVE TRUST
### (Against Defendants Wyatt, Catherine, Lord Abbey, Wells Fargo Bank, and Stripe)

335.     Plaintiffs incorporates and realleges all of the foregoing allegations as if restated

herein.

336.     By virtue of the facts described herein, Defendants obtained Plaintiffs' IP and

other assets improperly, fraudulently, unlawfully, and at the expense of Plaintiffs.

337.    Defendants used such data to create the Cloned Website and pay Defendant Wyatt "wages" for their own private and personal financial benefit.

338.    Further, Defendants continue to receive profits from the Cloned Website.

339.    A constructive trust should be imposed on the alleged wages paid to Defendant Wyatt, including by and through Lord Abbey, the monies taken from Plaintiffs' Stripe account, and the profits earned through the Cloned Website and deposited in Lord Abbey's bank account.

**COUNT 26**
**ACCOUNTING**
**(Against Defendants Wyatt, Catherine, Lord Abbey)**

340.    Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

341.    During the period from September 2019 till March 2020, Defendants were entrusted with managing Plaintiffs business operation.

342.    Instead, Defendants created the Cloned Website, diverted all clientele to themselves, paid Defendant Wyatt wages, removed monies from Plaintiffs' bank accounts, and retained the profits earned through their Cloned Website.

343.    Defendants refuse to account for how and when the monies tendered to them though Plaintiffs accounts were utilized.

344.    Defendants also made unauthorized withdrawals of monies from Plaintiffs' bank accounts without accounting to Plaintiffs where and how such monies were spent.

345.    The exact amount due to Plaintiffs is unknown and consequently Plaintiffs cannot accurately state the amount that is owed to it. The nature of these transactions

makes these calculations extremely complicated and the correct amount cannot be ascertained without an accounting.

346.     Further, the exact amounts taken from Plaintiffs is only known by the Defendants. Accordingly, the amounts due to Plaintiffs would be shown by an accounting.

347.     Since March 2020, if not earlier, Plaintiffs have been demanding an accounting from Defendants of the amount due to Plaintiffs.

348.     Defendants have not accounted to or paid Plaintiffs for the proceeds of the sales and has refused and continues to refuse to account for or pay over to Plaintiffs the amount due.

## COUNT 27
## DECLARATORY JUDGMENT
### (Against Defendants Wyatt, Catherine, Lord Abbey)

349.     Plaintiffs incorporate and realleges all of the foregoing allegations as if restated herein.

350.     There exists a justiciable controversy between Plaintiffs and the Defendants concerning the rightful amount, possession and ownership of the Business and its IP and other assets.

351.     A declaratory judgment by this Court would terminate the controversy.

352.     Plaintiffs request that this Court declare that Plaintiffs are the lawful owners of the Business, and all IP and other assets associated with the same; that Defendants use of Defendants Business and IP to create Clone Website was unlawful and in violation of the Plaintiffs rights detailed under Counts 5, 15, 16, 18, and 20; and that the alleged APA is null and void ab initio.

## COUNT 28
## PRELIMINARY AND PERMANENT INJUNCTION
### (Against Defendants Wyatt, Catherine, Lord Abbey LLC)

353.     Plaintiff incorporates by reference all the foregoing paragraphs as though set forth, in full, herein.

354.     Wherefore, Plaintiff requests that this court issue a temporarily and permanent injunction against Defendants, jointly and severally:

355.     Requiring Defendants to pay to Plaintiff such damages as Plaintiff has sustained in consequence of the infringement of Plaintiffs IP.

356.     Requiring Defendants to account for all and pay over to Plaintiffs all gains, profits, and advantages derived from infringement of Plaintiffs IP, including Trademarks;

357.     Requiring Defendants to file the requisite documents to transfer ownership to Plaintiff of the registered domains that violate Plaintiffs trademark, trade dress, trade secrets and copyrights along with all financial accounts that have been used to receive income from Defendant's websites cloned from Plaintiffs.

358.     Require Defendants to terminate the registration of ListShack.Support and any and all fictitious names used. In addition, this Court should enjoin the Defendants from infringing Plaintiffs rights in the "LISTSHACK" mark or any derivative form of said mark, in any manner, including but not limited to: prohibiting Defendants from advertising, marketing, offering for sale, selling or otherwise providing services under the confusingly similar infringing term "LISTSHACK.SUPPORT" and "LISTSHACK" and the "listshack.support." or any other domains with similar names;

359.     Using the term "LISTSHACK" or any other word or mark with similar names;

360.    Passing off any of its services or goods as those of Defendants;

361.    Causing a likelihood of confusion or misunderstanding as to the origin or sponsorship of Plaintiffs businesses, products or services;

362.    Causing a likelihood of confusion or misunderstanding as to Defendants affiliation, connection, or association with Plaintiffs or the products or services associated with Listshack or Listshack Pro;

363.    Unfairly competing with the Plaintiff, in any manner.

## COUNT 29
## TO DISREGARD CORPORATE ENTITIES
### (Against Defendant Lord Abbey)

364.    Plaintiffs incorporates and realleges all of the foregoing allegations as if restated herein.

365.    At all times relevant herein, Lord Abbey was controlled by Defendants Grantham and Catherine.

366.    Defendants Granthams treated Lord Abbey as their alter ego.

367.    Defendant Granthams used the entity form to avoid personal liability, such as the damages that they would otherwise be liable to Plaintiffs for.

368.    By virtue of the facts described herein, Defendants Granthams abused the entity form seeking to avoid any personal liability for their misdeeds, even though they are personally responsible for their fraudulent acts/omissions.

369.    Defendants Grantham benefited personally from their fraudulent acts.

370.    There will be an unjust and inequitable result if the corporate veil is not pierced in this lawsuit to reach Defendants Granthams' personal assets.

## RELIEF SOUGHT

WHEREFORE, the Plaintiffs request that this Honorable Court grant judgment in favor of the Plaintiffs and against **DEFENDANTS WYATT GRANTHAM, CATHERINE GRANTHAM, LORD ABBEY LLC**, jointly and severally, for the following relief:

A. $7.5 million in compensatory and consequential damages, including loss of goodwill and lost profits (past and future);

B. Treble damages under Va Code § 18.2-500;

C. All damages under VCCA § 18.2-152.12, including lost profits, the costs and expenses associated with any forensic examinations of computer systems/servers required to ascertain the extent of the harm done to Plaintiffs;

D. All damages and injunctive relief pursuant to Computer Fraud and Abuse Act 18 U.S.C.A. § 1030(g), Plaintiffs is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief for the reasons identified above,

E. All damages and injunctive relief pursuant to § 59.1-337 and 338 (Uniform Trade Secrets Ac) because Defendants from the continued willful and malicious misappropriation of Plaintiffs' Intellectual Property under said statute;

F. Damages in the sum of $3 million, or such damages as the court shall deem proper and within the provisions of the copyright statutes, but not less than the sum of $500;

G. Awarding Plaintiff $3 million in damages as it has sustained by reason of Defendant's copyright infringement and unfair competition; and that, because of the willful nature of such conduct, entering judgment for Plaintiff for treble damages;

H. The delivery by Defendants, their agents, employees and all holding with, through, or under them, or anyone acting on their behalf, to be impounded during the pendency of this action, of all articles alleged to infringe the copyrights of Plaintiffs Intellectual Property;

I. The delivery by Defendants, their agents, employees and all holding with, through, or under them, or anyone acting on their behalf, for destruction following a final decision in this action, of all infringing copies or devices, as well as all computer files, code, and other means for making infringing copies or devices;

J. Additional damages in the sum of$1.5 million for unfair and deceptive trade practices;

K. Damages under 15 U.S.C. Sec 1125(a) and (c) (False Designation of Origin) and injunctive relief pursuant to 15 U.S.C. Sec 1125 (c)(1), treble damages 15 U.S.C. Sec 1125 (5);

L. Cyberpiracy - 15 U.S.C. Sec 1125 (d)(2)(D)(i), the Plaintiffs are entitled to ask the Court for an order for the forfeiture or cancellation of the domain name or transfer of the domain name to Plaintiffs;

M. False Advertisement: Virginia Code § 18.2-216, Plaintiffs have suffered damages, in the exact amount to be proven at trial;

N. $350,000 in punitive damages;

O. Pre-Judgment Seizure of Wells Fargo bank accounts/Stripe account listed above;

P. Imposing a constructive trust on alleged wages paid to Defendant Wyatt and Catherine, either personally or through Lord Abbey;

Q. An accounting of all monies converted from the Plaintiffs;

R.  Preliminary and permanent injunction enjoining Defendants, their agents, attorneys, representatives, current employer and future employers, and persons or entities acting in concert with him, from further violations or use of the Plaintiffs Intellectual Property and Trade Secrets; from further violations of the Virginia Uniform Trade Secrets Act; from further violations of VA CODE Sections 18.2-499 and 18.2-500; and further contractual breaches, tortious conduct and violations of statutes as described above in this complaint;

S.  Declare that Defendants have no ownership, and never had any ownership, of the Business, its IP and/or other assets; that the APA was null and void ab initio;

T.  Pre and post judgment interest at the given statutory rate;

U.  Reasonable attorney fees;

V.  The costs of this action; and

W.  Disregard the legal fiction of the LLC under a theory of corporate veil piercing and/or independent torts, and hold Defendants Wyatt and Catherine, jointly and severally, liable in their personal capacities for the relief sought herein;

X.  Such other and further relief as the court deems proper.

Y.  Plaintiff demands a trial by jury.

Respectfully submitted,
Joshua Stacy, Affordable Marketing Lists, LLC and
Some Corporation,
By Counsel

By: _____
Faisal Moghul, Esq (VSB # 88636)
Fox & Moghul
3871 Plaza Drive
Fairfax, VA 22030

(T): 703-652-5506
(F): 866-451-9531
moghul@moghullaw.com



**EXHIBIT**

**1**

# FAQ

Welcome to the new interface! We're still working on lots of enhancements, so if anything isn't working properly, send us a screenshot to help@listshack.support.

## What is ListShack Pro?

ListShack Pro is an online digital platform that connects business owners, marketers, and salespeople with potential prospects. We offer an easy to use interface that allows you to target potential customers using geography and filters. Our goal is to help you get the right type of sales leads that fit the needs and wants of your business or organization.

## What type of lists and filters do you offer?

We offer both targeted calling and mailing lists. We also offer email lists.

Consumer Filters:  Age, Year and Month Born, Estimated Income Range, Homeowner, Status, Marital Status, Gender, Property Value, Property Type, Year Built, Purchase Year, Net Worth, Credit Rating

Business Filters: Search Industry by SIC Code, Number of Employees, Sales Volume, Years in business , Square Footage

Geography: USA, State, Area Code, County, City, Zip

Email filters: Has email, Includes Opt-in URL, Opt-in Date, Email service provider. Emails are compiled emails, and we recommend performing your own opt-in process before adding compiled email lists to your marketing campaigns

## How soon can I access the data?

Once you pay for your plan you will have instant access and be able to download records immediately.

## What format does the data come in?

Files are downloaded as a CSV which will open in most software including Microsoft Excel, Open Office, and every dialer we know about.

## Do I have to download your software?

No. ListShack Pro is an online only platform. No software is required to obtain our sales leads. All sales leads come straight from our site to your computer.

## Am I required to have a SAN for telemarketing?

Yes! Although we regularly scrub our lists against the DNC, that will not protect you from fines or other legal action if you do not register for a SAN and comply with the provisions of the TCPA.  In order to be protected from legal action each caller must register for a SAN which can be done for free by visiting https://telemarketing.donotcall.gov/  We cannot protect our customers from litigation or fines because the TCPA requires that each marketer must be responsible for registering for their own SAN and maintaining an internal DNC policy and procedure.

## What's the best way to use compiled email lists?

We have seen that sending personalized, one-to-one, emails is the most effective approach for using emails, and those emails are most often successful as a followup when someone talks with your or your business over the phone, by text message, or visits your website. A cold email, to someone that you've never met is easily ignored.

**List Shack Pro** · Typically replies within an hour       ×

Type "help" to get in touch with our support team!

## Am I required to do an email opt-in campaign?

As long as your emails comply with the CAN-SPAM regulations, you can send emails to t
However, we highly recommend doing opt-in campaigns. The emails we provide are not v
particularly the largest like GMAIL, YAHOO, and OUTLOOK, independently monitor em

Continue as Joshua

Not you? Log into Messenger

## Are there any limitations on the unlimited plan?



We offer an individual unlimited plan which means we provide an unlimited amount of data for an individual user. If you plan on using more than 50,000 records per month please contact us for more information about our other plans.

### Are there any contracts?

Absolutely not! You're welcome to cancel your membership at any time. Billing is on a monthly subscription basis. You must cancel at least three business days before the end of your billing cycle or you may be charged.

### Where do you get your data?

We aggregate our data from a variety of public sources as well as opt-in databases.

### How often is your data updated?

We run major updates quarterly and minor updates monthly.

### What information is included for consumer data?

First name, last name, phone number, address, county, age, and estimated income.

### What information is included for business data?

Name of the business, phone number, owner information (where available), address, sales volume, SIC code, and web address (where available).

### How do you handle cancellations and refunds?

You can cancel your subscription at any time. All subscriptions are non-refundable and no pro-rated refunds will be given. Please be sure to cancel at least three business days before the end of your billing cycle. Once you cancel you will still be able to enjoy the benefits of your membership through the end of your subscription period. If you do not cancel at least three business days prior to your renewal you may be billed and that charge will be non-refundable.

### How accurate is your data?

Our data runs at the industry average of about 90%. In some areas it may run better or worse, but you should expect to have a reasonably accurate list.

### Can I resell this data?

Resale of the data is expressly forbidden. If you are interested in becoming a reseller you can contact us for more information.



✉ sales@listshack.support

📞 833-222-7919

 List Shack Pro · Typically replies within an hour   

Type "help" to get in touch with our support team!

Continue as Joshua

Not you? Log into Messenger



EXHIBIT A
DEFENDANTS' NOTICE OF REMOVAL



 **list shackPro.com**
LISTS MADE EASY

☏ 833-222-7919   ❓ Help

**Member login**

| Welcome | Business Sales Leads | Consumer Sales Leads | Pricing | FAQ | Contact |

You can now add your whole team to your ListShack Pro account. Read more about the feature here



## The new way to get sales leads

Starting at $50 per month

Our simplified process     Signup Now

List Shack Pro

Type "help" to get in touch with our support team!

💬 Log into Messenger

Chat with List Shack Pro in Messenger

## Our simplified process

Payment Details

5/8/2020                                        Listshack Pro website issues. | Page 10

Log in or Sign up

**Discussions: 92,782 | Messages: 1,244,872 | Members: 79,394**



EXHIBIT
3
_____

| LIFE | ANNUITIES | HEALTH | PROPERTY & CASUALTY | SOFTWARE | PRACTICE BUILDING | E&O COVERAGE AGENT DISCUSSION |
|------|-----------|--------|---------------------|----------|-------------------|-------------------------------|

FORUMS      MEMBERS  ≡

Recent Posts    Search Forums                                             *Search...*

Forums    Insurance Agents and Brokers Forum    **Insurance Leads**

# Listshack Pro website issues.

Aug 5, 2019

Page 10 of 17   < Prev   1   ←   8   9   10   11   12   →   17   Next >



**Offline**

**Newby**
Guru

Posts:            15,259
Likes Received:   2,948

> **Wyatt Grantham said:** ↑
>
> *Yes, as of very recently I am a new owner.*

if you actually bought the company then you bought the debts too. Did he give you the list of people you owe money to? What is the best way for them to contact you?

Newby, Oct 16, 2019                                                          #91

EXHIBIT A
DEFENDANTS' NOTICE OF REMOVAL

70

3/13/2020                                              Is ListShak Back?

**Discussions: 92,299 | Messages: 1,236,926 | Members: 78,975**





| LIFE | ANNUITIES | HEALTH | PROPERTY & CASUALTY | SOFTWARE | PRACTICE BUILDING |
|------|-----------|--------|---------------------|----------|-------------------|

New Posts  3,   MEMBERS  ≡  ns Read    Search Forums    Watched Forums    Watcl    ⌄ JOSH    INBOX  

Forums       Insurance Agents and Brokers Forum       **Senior Insurance Forum**

# Is ListShak Back?

Views: 520

**Reply to Thread**

Watch Thread

Offline

**axeman462**  ✉
Guru

| Posts: | 1,896 |
| Likes Received: | 266 |
| State: | Florida |



got the below email from them this morning:

Hi ....,

Today, we released the new interface of ListShack! You can access the new interface at **listshack.support**. Login to your account with the same email that you used to sign up for ListhShack (the email we sent this message to) to search for and download leads. If you don't remember your password, just signup for a new account with the same email address. Within the next 30 days, we'll attach your existing subscription to the new interface.

For the next 7 - 10 days, you'll still be able to access the old platform on listshackpro.com. Please take some time to login and download any previous data sets or invoices that you'd like to keep for you records. We'll sunset the old interface and transition the domain over to ListShackPro.com within the next few weeks, to give everyone the opportunity to download their data and invoices.

DEFENDANTS' NOTICE OF REMOVAL

Thank you for your loyalty!


Warmest Regards,


Wyatt Grantham

David Walls
————————
Lets not get tired of doing good, because in time we'll have a harvest if we don't give up. ~ Galatians 6:9

axeman462, Nov 1, 2019   ☰                    #1  👍  Like   + Multi  ↩  Quote   Top

Yeah, but where is Josh? What are they doing for the agents they screwed? I wouldn't do one thing with them until all parties have been satisfied.



**Online**

**Todd King** ✉
IMO/FMO Owner

Posts:           9,053
Likes Received:  2,773
State:           Virginia



**"Do the right thing because it's simply the right thing to do."**
Todd R. King
Owner at TR King Insurance Marketing
Partner at ILIAA.org and MT101.com

(540) 400-6275 Local
(800) 590-7207 Toll Free

**Need Life and Medicare Contracts?**
Start Here: http://www.trkingim.com/

**New to Insurance?**
Begin your career at *ILIAA.org* and *MedicareTraining101.com* or *FinalExpense101.com*

Todd King, Nov 1, 2019   ☰                    #2  👍  Like   + Multi  ↩  Quote   Top

vic120 and shonceman like this.


Todd King said: ↑

*Yeah, but where is Josh? What are they doing for the agents they screwed? I wouldn't do one thing with them until all parties have been satisfied.*

**Offline**

Oh, you know, he's just laughing at the people he ripped off and posting about it online. All's well.

**whatyouwantfinall** ✉
**y**
Super Genius

Attached Files:

DEFENDANTS' NOTICE OF REMOVAL

3/13/2020       

Is ListShak Back?

Posts: 113
Likes Received: 16
State: Alabama

Screen Shot 2019-10-31 at 4.24...
File size: 146.4 KB
Views: 25

\

---

whatyouwantfinally, Nov 1, 2019 ≡   #3 👍 Like  + Multi  ↩ Quote  Top



Offline

**axeman462**  ✉
Guru

Posts: 1,896
Likes Received: 266
State: Florida

I cancelled my subscription several months ago

David Walls
————————
Lets not get tired of doing good, because in time we'll have a harvest if we don't give up. ~ Galatians 6:9

axeman462, Nov 1, 2019 ≡   #4 👍 Like  + Multi  ↩ Quote  Top

---

Previous Thread   Next Thread

B   *I*   U   ◐   T!   A   🔗   ⌗   ≡   ☰   ☷   ☰   ☰   ⬛   📄

☺   🖼   🎞   ✚   💾   ↺   ↻

Write your reply...

Post Reply   Upload a File   More Options...

---

RITTER INSURANCE MARKETING

Ritter and Carrier Operations During the COVID-19 Pandemic

More People Working Past Age 65: What It Means for Agents Selling Medicare Plans

Is ListShak Back?

Have You Watched Ritter's State of the Senior Market?

**Last Posts**   **New Threads**   **Stickies**

Listshack Pro website issues.
Josh replied 2 minutes ago


Seasoned Agent Looking For New...
Todd King replied 5 minutes ago


BEWARE of Some FMO's!!
rousemark replied 10 minutes ago


FMOs Are Greedy
Todd King replied 19 minutes ago


Corona virus
Thedude replied 19 minutes ago


HELP FINDING GOOD IMO, BEEN...
rousemark replied 31 minutes ago


Are there any carriers who...
rousemark replied 45 minutes ago


Are any prospects refusing...
Life Hawk replied 47 minutes ago

## SENIOR INSURANCE ARTICLES


New 2020 Medigap Cost Comparison study focuses on Plan G


Agent Pipeline joins forces with Integrity Marketing Group


Complexities in MA options discourage seniors from comparing plans

EXHIBIT A
DEFENDANTS' NOTICE OF REMOVAL

3/13/2020                                                                     Is ListShak Back?

Comparison shopping can save Med Supp
enrollees more than $1,000 per year



 Medicare premiums taking one of
biggest jumps in years says Senior
Citizens League

## WHERE DO WE GO FROM HERE? POLL

Nothing - No ACA fixes - status quo

17 vote(s)

HHS Rulings and band aid bills

10 vote(s)

Hail Mary repeal and/or replace bill

10 vote(s)

A bipartisan bill to fix ACA

20 vote(s)

## MEMBERS ONLINE NOW

Josh, KOC Agent, suranceman, SouthernAdvisor,
bigshow, Todd King, damadcrapper, monstrhuntr,
inreverse, CALTCAgent, mschwee, STIBROKER,
FreeIsWhereItsAt, Shah Inc, Chazm

Total: 193 (members: 21, guests: 157, robots: 15)

Forums    Insurance Agents and Brokers Forum    **Senior Insurance Forum**    



Home

Login / Register

About Us

Contact Us

EXHIBIT A
DEFENDANTS' NOTICE OF REMOVAL

4/7/2020                                                                    Gmail - HELP!



 Gmail                                    Josh <joshua.stacy@gmail.com>

## HELP!
2 messages

**Giovanni Morado** <giovanni@moradoinvestments.com>              Mon, Nov 4, 2019 at 10:24 AM
To: sales@listshackpro.com

   I have not been able to download lists for 5 weeks. I have called several times trying to resolve this issue nobody has
   returned my call. Can I have a refund please? Or can somebody resolve this issue ?
   **Giovanni Morado**
   **President**
   **Morado Investments Inc.**
   4100 Spring Valley Rd Ste 730
   Farmers Branch, Tx 75244
   (972) 834-7952
   giovanni@moradoinvestments.com
   *www.moradoinvestments.com*

   *"Life is about making an impact, not making an income"*
   *- Kevin Kruse*

**Wyatt Grantham** <wyatt@listshack.support>                     Mon, Nov 4, 2019 at 11:26 AM
To: Giovanni Morado <giovanni@moradoinvestments.com>
Cc: sales@listshackpro.com

   Hi Giovanni,

   Thanks for signing reaching out and very sorry for the issues that you've been having with ListShack.  Just called and left
   a voicemail. We're moving to a new interface.  You can use the old site ListShackPro.com to download your previous
   datasets and your invoices for the next few days.  In the meantime, if you want to get some new leads, you'll be able to
   get those from ListShack.Support ... It's available now here.

   You can login with the same email and password as you did before.

   There's still lots of construction going on... so just let us know if something isn't working right, and we'll get it fixed for you.

   Best,

   Wyatt
   ListShackPro.com

   [Quoted text hidden]

DEFENDANTS' NOTICE OF REMOVAL

☐ **CORRECTED (if checked)**

| FILER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | FILER'S TIN | OMB No. 1545-2205 | **Payment Card and Third Party Network Transactions** |
|---|---|---|---|
| Stripe, Inc<br>510 Townsend St<br>San Francisco, CA 94103 | PAYEE'S TIN █████ | **2019** | |
| | **1a** Gross amount of payment card/third party network transactions<br>$ 416,210.46 | Form **1099-K** | |

| | | 1b Card Not Present transactions<br>$ 416,210.46 | 2 Merchant category code<br>7392 | **Copy B For Payee** |
|---|---|---|---|---|
| Check to indicate if FILER is a (an): | Check to indicate transactions reported are: | 3 Number of payment transactions<br>6,053 | 4 Federal income tax withheld<br>$ | This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |
| Payment settlement entity (PSE) [X] | Payment card ☐ | | | |
| Electronic Payment Facilitator (EPF)/Other third party ☐ | Third party network [X] | | | |
| PAYEE'S name<br>Affordable Marketing Lists, LLC | 5a January<br>$ 48,109.80 | 5b February<br>$ 42,643.00 | |
| | 5c March<br>$ 41,014.00 | 5d April<br>$ 35,293.00 | |
| Street address (including apt. no.)<br>2915 Hunter Mill Road Unit 16 | 5e May<br>$ 42,495.00 | 5f June<br>$ 36,450.00 | |
| | 5g July<br>$ 38,077.00 | 5h August<br>$ 34,836.00 | |
| City or town, state or province, country, and ZIP or foreign postal code<br>Oakton, VA 22124 | 5i September<br>$ 27,602.00 | 5j October<br>$ 24,469.00 | |
| PSE'S name and telephone number | 5k November<br>$ 22,237.00 | 5l December<br>$ 22,984.66 | |
| Account number (see instructions) | 6 State<br>- - - - - - - - - -<br>- - - - - - - - - - | 7 State identification no.<br>- - - - - - - - - -<br>- - - - - - - - - - | 8 State income tax withheld<br>$<br>$ |

Form **1099-K**          (Keep for your records)          www.irs.gov/Form1099K          Department of the Treasury - Internal Revenue Service

**EXHIBIT 6**

EXHIBIT A
~~DEFENDANTS' NOTICE OF~~ REMOVAL



**Lord Abbey LLC** ⌄    🔍 Search...    📣 Feedback about this page?    🔔 ❓ 👤

🏠 Home

💳 Payments
    Disputes

↻ Balances

⊙ Customers

▦ Reports

🜨 Atlas

◉ Radar

◉ Billing

| | | | Succeeded | | Refunded | | Uncaptured | | All |
|---|---|---|---|---|---|---|---|---|---|

▼ Filter      + New    ↗ Export

| AMOUNT | | | | DESCRIPTION | CUSTOMER | DATE | |
|---|---|---|---|---|---|---|---|
| $3,500.00 | USD | Succeeded ✓ | | py_1G72gfFmkFtj01Xn3PN9cCyA | | Jan 31, 2020, 4:49 PM | ⋯ |
| $18,500.00 | USD | Succeeded ✓ | | py_1FlNxeFmkFtj01XnEW83zwUQ | | Dec 2, 2019, 11:05 PM | ⋯ |
| $5,000.00 | USD | Succeeded ✓ | | py_1FbYkuFmkFtj01XneU6LcA0T | | Nov 5, 2019, 8:36 PM | ⋯ |

Commonwealth of Virginia
State Corporation Commission
Office of the Clerk
Entity ID: S4558328
Filing Number: 200130287927
Filing Date/Time: 01/30/2020 04:17 AM
Effective Date/Time: 01/30/2020 04:17 AM

| Entity Name: | Affordable Marketing Lists, LLC | | Entity Type: | Limited Liability Company |
| Entity ID: | S4558328 | | Formation Date: | 05/21/2013 |
| Status: | Inactive | | | |

Date Signed: 01/30/2020

Executed in the name of the limited liability company by:

| Entity Name | Entity Type | Printed Name | Signature | Title |
|---|---|---|---|---|
| Some Corporation | Stock Corporation | Joshua Stacy | Joshua Stacy | Owner |

**EXHIBIT**

**7**

**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

AT RICHMOND, JANUARY 30, 2020

ORDER OF REINSTATEMENT

The existence of Affordable Marketing Lists, LLC, a Virginia limited liability company, was canceled on August 31, 2019. The limited liability company has filed an application for reinstatement and has otherwise complied with the applicable requirements of law.

Therefore, it is ORDERED that the existence of the aforementioned limited liability company is reinstated.

STATE CORPORATION COMMISSION

By _Judith Williams Jagdmann_

Commissioner

4/7/2020                                   Gmail - Repeat and upset callers on your account 8669102738

 Gmail                                          **Josh <joshua.stacy@gmail.com>**

---

## Repeat and upset callers on your account 8669102738

---

**AnswerConnect Client Services** <reply-task-9dd46407-6d58-4604-b46b-3cf90a0d54e7@live-dswebapp.appspotmail.com>
Reply-To: AnswerConnect Client Services <reply-task-9dd46407-6d58-4604-b46b-3cf90a0d54e7@live-dswebapp.appspotmail.com>
To: joshua.stacy@gmail.com

Fri, Dec 20, 2019 at
10:18 AM

Hey Joshua,

Hope you are doing well.

I would like to bring this to your attention that we are receiving multiple repeat and upset callers on your accounts.

Would you like our agents to take such calls in a specific way or is there any instruction you would like to provide our agents as we are receiving multiple feedbacks from our agents.

Please provide us an update on this.


       **Radhika Kumar**
                           Client Account Manager

                           ✉ clientservices@answerconnect.com
                           ☎ 800-531-5828



3/3/2020                                                    Atlantic Metro



Joshua Stacy

| | |
|---|---|
| 4 open tickets | 1 outstanding invoice |
| 375 closed tickets | 2 active services |

**Menu**
- **Client Profile**
  - View Profile
  - Payment Methods
  - Change Password
  - View Contacts
- **Billing & Services**
  - View Invoices
  - View Services
  - View Tax Exemptions
  - View Credits
  - View Orders
  - View Quotes
  - Paypal Subscriptions
- **Reports**
  - Client Ledger Log
  - Mail Log
- **Domain Management**
  - List Domains
- **Support**
  - View Tickets
  - Submit New Ticket
  - Ticket Search
- ▶ **Device Manager**
- ▶ **Software Mirror(s)**
- ▶ **Document Library**
- ▶ **Notification Management**

TICKET #675943

## ◼ Remove existing primary contact

EditTic

| Originally Submitted: | 4 days ago | Owner: | Jim Carabello |
|---|---|---|---|
| Last Updated: | 1 day ago | Department: | Support |
| Status: | Open | | |
| Priority: | Normal | | |
| Device: | 8665 | Service: | 18000 |
| Order: | None | Quote: | None |
| Rating: | - | Time Spent: | 1 minute |

**Ticket Clasification**

Classification:  [INFO] Informational / Information Request

**Contact Info**

Name:  Wyatt Grantham
Phone:  7037853738

↵ Post a Followup

🔀 **Client**                  Received on Feb/29/2020 12:20:02AM

Hi There,

From: Wyatt Grantham
wdgrantham@gmail.com

I recently purchased the servers and hosting account from the existing account owner. Is it possible to have him removed as the primary contact on the account and exchanged for my information?

I've included the signed bill of sale as an attachment, and the description of the sale of the servers and the hosting account are found in Schedule 1.1(a) Item 2.

Specifically, I'd like to remove Joshua Stacy from the account and only leave Wyatt Grantham. Both are currently under the account profile.

Thanks,

Wyatt

🗎 Attachments:
BUSINESS_ASSET_PURCHASE_AGREEMENT_(1)_signed_(1).pdf  *(318.27 KB)*

↵ Reply | Reply & C

🔀 **Client**                  Received on Feb/29/2020 1:09:28AM

Just logged in and I don't see any profile information or a place to change the password.  How would I go about doing that?

From: Wyatt Grantham
wdgrantham@gmail.com

Best,

Wyatt

On Fri, Feb 28, 2020 at 11:04 PM Atlantic Metro Communications <
support@atlanticmetro.net> wrote:

▮ show quoted text

🗎 Attachments:
attachment-1.html  *(2.22 KB)*

↵ Reply | Reply & C

👤 **Staff**                  Sent to Wyatt Grantham on Feb/29/2020 1:23:47AM

Wyatt,

What is your password? I may have to reset it for you.

From: Joe Leach

Regards,
–
Joe Leach
Tier 1 Network Operations
jleach@atlanticmetro.net
212.792.9950 - option 5

Atlantic Metro Communications
Cloud Hosting • Colocation • Network Connectivity
• Managed Services

**EXHIBIT**

**9**

 **Gmail**

**Josh <joshua.stacy@gmail.com>**

## Re: [#676003] 2/29/20 Turn off machine with ip address of 69.169.92.215
7 messages

---

**support@atlanticmetro.net** <support@atlanticmetro.net>          Sat, Feb 29, 2020 at 9:50 AM
Reply-To: support@atlanticmetro.net
To: Wyatt Grantham <wdgrantham@gmail.com>

Hi Wyatt,

Per our phone call you requested that we black hole ip 69.169.92.215 since you are unsure which machine in your rack is the correct one to shut down.

The ip has been black holed as requested and is no longer accessible.

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-
ping 69.169.92.215 -c2
PING 69.169.92.215 (69.169.92.215) 56(84) bytes of data.

--- 69.169.92.215 ping statistics ---
2 packets transmitted, 0 received, 100% packet loss, time 11001ms
\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-

Regards,
--
Dave Nees
Tier 1 NOC Technician
dnees@atlanticmetro.net
212-792-9950, x2

Atlantic Metro Communications

Cloud Hosting • Colocation • Network Connectivity • Managed Services
Follow us on Twitter: @atlanticmetro
Like us on Facebook: facebook.com/atlanticmetro
www.atlanticmetro.net

**EXHIBIT**

**10**

---

**Josh** <joshua.stacy@gmail.com>                                Sat, Feb 29, 2020 at 10:23 AM
To: support@atlanticmetro.net, Wyatt Grantham <wdgrantham@gmail.com>, stephenyoungllc
<stephenyoungllc@gmail.com>

Hello.

The 215 IP address is actually for a server that is in that cabinet for our services.  Please un-"blackhole" it.

Best,

Joshua Stacy
[Quoted text hidden]

---

**support@atlanticmetro.net** <support@atlanticmetro.net>          Sat, Feb 29, 2020 at 10:31 AM
Reply-To: support@atlanticmetro.net
To: Josh <joshua.stacy@gmail.com>
Cc: Wyatt Grantham <wdgrantham@gmail.com>, stephenyoungllc <stephenyoungllc@gmail.com>

Hello,

DEFENDANTS' NOTICE OF REMOVAL

4/7/2020                    Gmail - Re: [#676003] 2/29/20 Turn off machine with ip address of 69.169.92.215

Acknowledged. Please allow us some time to work on your request.
[Quoted text hidden]

---

**support@atlanticmetro.net** <support@atlanticmetro.net>          Sat, Feb 29, 2020 at 10:46 AM
Reply-To: support@atlanticmetro.net
To: Josh <joshua.stacy@gmail.com>
Cc: Wyatt Grantham <wdgrantham@gmail.com>, stephenyoungllc <stephenyoungllc@gmail.com>

Hello,

Our Network Engineers have undone the blackhole on ip 69.169.92.215. I have tested and it is reachable via ping.

In the future, please be sure about the ip address when making this kind of request, we would appreciate it.

Thanks,
[Quoted text hidden]

---

**Josh** <joshua.stacy@gmail.com>                                  Sat, Feb 29, 2020 at 11:00 AM
To: support@atlanticmetro.net
Cc: Wyatt Grantham <wdgrantham@gmail.com>, stephenyoungllc <stephenyoungllc@gmail.com>

Excellent, thank you very much!
[Quoted text hidden]

---

**support@atlanticmetro.net** <support@atlanticmetro.net>          Sat, Feb 29, 2020 at 11:06 AM
Reply-To: support@atlanticmetro.net
To: Josh <joshua.stacy@gmail.com>
Cc: Wyatt Grantham <wdgrantham@gmail.com>, stephenyoungllc <stephenyoungllc@gmail.com>

You're welcome Josh.

I'll go ahead and close this ticket.

Regards,
[Quoted text hidden]

---

**Josh** <joshua.stacy@gmail.com>                                  Sat, Feb 29, 2020 at 11:57 AM
To: "Michael B. Dvoren" <mbd@jaburgwilk.com>

For Reference Monday
[Quoted text hidden]

DEFENDANTS' NOTICE OF REMOVAL



**EXHIBIT**

**11**

**Wyatt Grantham** <wdgrantham@gmail.com>                    Fri, Feb 28, 2020 at 3:20 PM
To: Josh <joshua.stacy@gmail.com>

Hey Josh,

I just left you a voice mail. Let me know when you are free to chat. I'm good with just handing everything over that is
there. I would just really appreciate something in writing that means we don't have to worry about this anymore.

Wyatt
[Quoted text hidden]



W   About   Contact



Here's a little bit about me.

## I do startups, and I love my work.

I am currently starting up Directangular.

I also started up Listshack where I helped get things rolling to $1M+ annual revenue.

I did a fun side-project called Home Toro that provides free websites and social media marketing tools for Real Estate professionals. Check out a sample site at SocialBroker.HomeToro.com.

I also started up Analyze Corporation where I helped to raise $3M+ in growth capital through Angel List, Keiretsu Forum, and friends and family.

I learned business working for Raytheon in their Leadership Development Program. After graduating the program I helped start the Cyber training product-line.

I also like to invest in software startups. I've found startups through Piranha Tank and Startups Ignite.

Connect with me on LinkedIn

I graduated from Brigham Young University.

EXHIBIT
13

## Contact

wdgrantham@gmail.com

www.linkedin.com/in/wyatt-grantham (LinkedIn)
www.AnalyzeCorp.com (Company)

## Top Skills

Earned Value Management
DoD
Government Contracting

## Languages

Spanish

## Publications

Why Men Wear Women's Jeans:
The Trendsetters and Early Adopters
in the Diffusion of Corporate
Punishment Reforms

# Wyatt Grantham

Co-Owner, Chief Operations Officer at Directangular
San Francisco Bay Area

## Summary

My name is Wyatt Grantham, and I enjoy building stuff.  In the last 10 years, I've mostly built software and technology companies.

I didn't start in software.  It was 2008, I was in college selling pest control services door-to-door, and I noticed that many of the homes had for sale signs in their front yards.  I partnered up with a mortgage broker and started selling mortgage leads (along with pest control services) until the housing market crashed.  Nervous about where the economy was headed, I went back to college, graduated as quickly as possible, and landed a great job working at Raytheon, where I could shore myself up financially and learn as much as possible until the economy recovered.

Four years later, with the economy looking better and with experience starting a cybersecurity training product-line, I co-founded Analyze Corporation.  Analyze made a name for itself by building a text analytics algorithm for a cybersecurity threat intelligence product, and Analyze makes money to this day by reselling threat intelligence products.  Two of my co-founders still run Analyze — check the company out at AnalyzeCorp.com.

Three years after starting Analyze, I helped start Directangular. Directangular provides software to direct sellers marketing products online and on social media.   Three later and we've served more than 55M people with Sonlet.com, and continue to be the platform of choice for direct sellers looking for affordable, effective solutions for growing their businesses online and on social media.

I'm interested in helping software companies become great, whether that means identifying and capitalizing on a great opportunity or working with great people.   If you're looking for help making your own software company great or you want to get in on the ground level of a new software company I'm working on, I'd love to chat.

# Experience

**Directangular**
Co-Owner, Chief Operations Officer
August 2016 - Present (3 years 8 months)
Greater San Diego Area

Led business strategy, product roadmap, partnerships and integrations
for new software company. Helped grow company from 10,000 – 35,000+
active subscribers, 3M+ monthly website visitors, and company valuation
of $17.6M. Recruited for and oversaw the Board of Advisors. Front end
development including design and development of user interfaces on
Sonlet.com, PopItup.com, and Directangular.com. Proficient in HTML,
JavaScript, CSS, Python, and Liquid including React, Django, and Node.js.
Responsible for marketing, including monthly email newsletter, email
onboarding series, and customer churn reduction campaigns.

**Startups Ignite**
Mentor
January 2017 - Present (3 years 3 months)
Washington D.C. Metro Area

I periodically speak to, advise, or mentor companies and startup founders
through startups-ignite.

**Lord Abbey LLC**
Chief Executive Officer
July 2016 - Present (3 years 9 months)
San Francisco Bay Area

Software startup consulting

**Analyze Corporation**
Co-Founder, Chief Financial Officer, Co-Owner
March 2013 - Present (7 years 1 month)
fairfax, va

Developed pitch and led due diligence to raise $3M+ in seed and Series A
investment for big data analytics tech startup at $10M valuation. Established
and led cybersecurity reseller product line, growing to $1M+ in revenue
in 18 months. Directly managed 6+ employees of 15- person company.
Led software product roadmap, marketing strategy and sales team for big
data analytics products Donor Impact and Analyze Clients. Designed and

implemented AnalyzeCorp.com. Learned HTML, Javascript, CSS, and Python for webscraping and data gathering for data analytics projects.

## AffordableMarketingLists.com
### Strategic Advisor, Chief Financial Officer
January 2014 - January 2017 (3 years 1 month)

Helped grow the company to profitability. Designed new interface for new CRM product. Provided product roadmap and technical description to engineering team. Oversaw product development and launch. Collected customer feedback and product input. Hired and managed sales team to lead product growth and helped hire SEO contractor to get 1st and 2nd page ranking on Google.

## Raytheon
3 years 9 months

### Contracts Negotiator
July 2011 - March 2013 (1 year 9 months)
Greater DC Metropolitan Area

Program and capture management for cyber security training product-line startup. Financial analysis, pricing, and business case strategy for research and development and training course development proposals. Negotiated and managed pricing strategy of de-scope proposal of $190M contract for elimination of intercontinental ballistic missiles. Proposal writer for world-wide logistics proposal to Defense Threat Reduction Agency. Negotiated teaming arrangement with strategic small

business partner for technology upgrades for U.S. Embassies. Proposal team for venture with Russian commercial power company. Negotiated intellectual property and licensing rights for shipping and travel support software.

### Contracts Leadership Development
August 2010 - July 2011 (1 year)
Greater Boston Area

Negotiated $500K airport screening program in San Francisco. Automated internal bookings process permitting reduction of operating costs by $500K annually. Provided contractual strategy for programme termination in the United Kingdom. Negotiated $47M services contract in Saudi Arabia. Provided guidance for meeting regulatory and contractual obligations such as TINA sweeps, representations and certifications, and responses to Government audit requests. Coordinated internal proposal kick-offs and proposal approval reviews with executive leadership.

**Contracts Leadership Development**
July 2009 - August 2010 (1 year 2 months)
Greater Los Angeles Area

Renegotiated radar repair contracts with Japanese and South Korean customers improving profit margins by 50-100%. Negotiated and managed international contracts valued at over $500M annually. Developed first material purchases terms and conditions with Saudi Arabian partner for offset agreements. Developed letters of credit, payment bonds, and performance guarantees for sales in South Korea. Managed contract and financial setup in financial systems.

**The Scottish Parliament**
Parliamentary Assistant
January 2008 - May 2008 (5 months)

Speech research, writing and analysis; constituent correspondence, Interest and Lobby group meeting coordination

**Missionary Training Center**
Spanish Teacher
2007 - 2008 (1 year)

———

# Education

**Brigham Young University**
B.A. Political Science, Political Science & International Relations · (2007 - 2009)

3200 N. Central Avenue, 20th Floor, Phoenix, AZ 85012

**JABURG|WILK**
Attorneys at Law

jaburgwilk.com

**Michael B. Dvoren**

mbd@jaburgwilk.com
602.248.1067 – Direct Phone
602.248.0522 – Main Fax



**EXHIBIT**
**14**

March 04, 2020

<u>**Via Email Only**</u>

Wyatt Grantham
wdgrantham@gmail.com

Wyatt Grantham, Owner
wdgrantham@gmail.com
Lord Abbey, LLC
1142 Arbol Way,
San Jose, CA 95126

     **Re:** *Demand Letter*

Dear Wyatt,

     As you know, I and my firm represent Joshua Stacy ("**Josh**"), Some Corporation and Affordable Marketing Lists, LLC *dba* List Shack ("**AML**"). As you also know, I'm generally familiar with your involvement with AML's business and operations during the past six months.

     I've recently become aware of some disturbing facts and allegations. Until recently, my understanding from both Josh and from you directly (*e.g.*, per our phone call last fall) was that you had stepped in to operate AML temporarily and were doing this purely as Josh's friend and with no motive other than to help him out during a difficult time (*i.e.*, his mental health condition and related legal case in Los Angeles).

     Now, my understanding is that you are holding AML's business assets hostage and appear to be refusing to return them to Josh's sole control (in his capacity as AML's sole member and manager). Despite your 2/26/2020 email to Josh stating that you would officially "turn over" the business and "the merchant processing account" on March 1, 2020 per his request, my understanding is that you have so far failed to do so.

     First, under the pretense of protecting AML and its business from creditors, you tried to induce Josh to sell you (through your entity, Lord Abbey LLC) AML's valuable business assets in January for a fraction of their market value while Josh was still suffering from a temporary but serious mental health condition that you were well aware of. Contrary to your representation to me that you had merely "purchased the domains from Josh / AML to help him out" (your 2/12/2020 email to me), I was not aware until more recently that you actually tried to obtain all of AML's valuable business assets for a



mere $3,500 through a Business Asset Purchase Agreement dated January 17, 2020 ("**Agreement**"). These assets included AML's copyrights, ListShack trademarks, confidential information (including AML's customer lists), web domains, computer servers, databases, and third party accounts. You knew full well that these assets were worth many multiples of the meager $3,500 you tried to pay for them. For example, my understanding is that AML's Stripe account alone had approximately $50,000 in it.[1] As another example, the computer servers currently housed at Atlantic Metro's facility are worth approximately $40,000 and are responsible for generating many times that amount in ongoing revenue. I find it difficult to believe that any competent and ethical bankruptcy attorney (or any other attorney) you consulted with would have advised you to induce Josh into such an unconscionable transaction.

For multiple reasons, the Agreement was never legally entered into and is therefore void from inception. For example, as of the January 17, 2020 date of the Agreement, AML had an "inactive" status in the State of Virginia and was not legally able to conduct any business at that time, including the transaction contemplated in the Agreement. As another example, Josh was suffering from temporary mental health incapacity at the time,[2] making it doubtful that Josh fully understood what was happening or had the legal capacity to contract on AML's behalf.

Second, you have still not returned sole control of AML's Stripe account to Josh in his capacity as AML's sole member and manager. My understanding is that although Josh agreed last year to transfer the Stripe account to your control temporarily, it was always with the understanding that you would transfer it back once Josh resumed control of AML and its operations. Josh has requested that you transfer the account back several times now and you have so far failed to do so.

Third, while representing yourself as CFO of Some Corporation and acting on behalf of AML in or around November and December of 2019, you told certain creditors, including First Home Bank, that AML and/or Some Corporation could not pay its debts and was unlikely to survive. Meanwhile, my understanding is that you were simultaneously removing untold thousands of dollars per month from AML's Stripe account and now wish to pay yourself $14,000 per month from this same account.

Fourth, during the time Josh was incapacitated, my understanding is that you registered the domain listshack.support, created a clone of AML's website (listshack.com), changed the DNS settings to re-direct all of AML's customers from AML's servers to Amazon's servers which hosted listshack.support, used AML's customer list and the cloned version of listshack.com to sell the same data that AML sells to its customers, and then kept the money paid by those AML customers for yourself and/or Lord Abbey LLC.

---

[1] Based on your representation to Josh, on or about February 20, 2020, that AML had $50,000 in its Stripe account's reserves.

[2] As you well know, the Los Angeles Superior Court ruled that Josh was temporarily mentally incompetent not long before this.


JABURG|WILK
Attorneys at Law

Wyatt Grantham
March 04, 2020
Page 3

Finally, on February 29, 2020, *after* you represented to Josh that you would officially "turn over" the business to him on March 1, 2020 (*see* your 2/26/2020 email), you wrote to Atlantic Metro from wdgrantham@gmail.com. In that communication, you claimed that you "recently purchased the servers and hosting account from the existing account owner," requested that Atlantic Metro "have him removed as the primary contact and exchanged for my information" and blatantly stated that "I'd like to remove Joshua Stacy from the account and only leave Wyatt Grantham."

The above described activities subject you and Lord Abbey LLC to serious civil and possibly criminal liability. My clients have numerous legal claims against you for, among other possible claims and without limitation, conversion, fraud, fraudulent inducement, tortious interference, breach of fiduciary duty, unfair competition, trade secret misappropriation (for any continued use of AML's proprietary customer list without authorization), trademark infringement (for any continued use of the ListShack trademarks, including listshack.support, without authorization) and copyright infringement (for any continued use of Josh's and Stephen Young's computer code, any derivative code[3], and any other copyright protected works you continue to use without authorization). My clients may also choose to bring one or more claims under Virginia's business conspiracy statute which allows plaintiffs to seek treble damages and attorney's fees. *See* Va. Code § 18.2-499, 500.

Every day that you delay or refuse to return sole control of AML's operations and business assets to Josh is causing further damage to him and his businesses. For example, Josh was recently contacted by certain AML customers requesting refunds which Josh is unable to address or process without access to and control of the Stripe account.

In order for you to rectify this situation and avoid a lawsuit being filed against you and Lord Abbey LLC, Josh has authorized me to make a one-time settlement proposal to you. Josh, Some Corporation and AML will agree not to pursue their legal claims against you *if and only if* you agree to the following:

1. Within 24 hours after receiving this letter, you contact Stripe and successfully transfer 100% control of AML's Stripe back to Josh;

2. Within 24 hours after receiving this letter, you contact Atlantic Metro in writing and explain to them that: (a) you are withdrawing your 2/29/2020 request to remove Josh from the account and (b) you are no longer to have any access to, or control of that account. Immediately thereafter, you permanently cease any and all communications with Atlantic Metro (including without limitation, stop trying to remove Josh from the account);

---

[3] While you may claim you had to "rewrite the software" (your 2/26/2020 email to Josh), your copying and creation of derivative code from AML's code without authorization violates Josh's and Stephen Young's copyrights in and to that code and may subject you to statutory liability and damages. *See* 17 U.S.C. §§ 106, 501, 504 - 505.


JABURG|WILK
Attorneys at Law

Wyatt Grantham
March 04, 2020
Page 4

3.  Within 48 hours after receiving this letter, you return all of AML's and Some Corporation's personal property and intellectual property to Josh (including without limitation, its customer lists, computer code, user accounts, passwords and any other access codes, and anything stemming from your access to Josh's personal email account, Joshua.stacy@gmail.com) and immediately thereafter, cease any and all uses of all such property (including, without limitation, permanently ceasing any and all uses of AML's computer code and any and all uses of AML's customer lists, including any soliciting, communicating with, and/or doing business with any of AML's customers going forward);

4.  After verifying that all such property in #3 above has been properly delivered to Josh and you receive written confirmation from Josh that he can access and use all such property, promptly destroy any and all electronic and hard copies of all such property;

5.  Within 48 hours after receiving this letter, transfer the listshack.support domain to AML;

6.  Within 7 calendar days after receiving this letter, provide Josh with a full financial accounting for AML and Some Corporation during the entire period of time you operated them (including, without limitation, any and all amounts you paid yourself and Lord Abbey LLC during this time period);

7.  Immediately change your LinkedIn profile and your resume so that neither continues to falsely state that you were AML's "Chief Financial Officer" and "Strategic Advisor" from January 2014 to January 2017; and

8.  Immediately stop claiming, on WyattGrantham.com and anywhere else the claim appears, that you started ListShack and that you brought ListShack to $1 million dollars in annual revenue.

Separately, this letter hereby constitutes formal notice that you no longer authorized to: (1) operate any aspects of AML's or Some Corporation's businesses; (2) contract or otherwise enter into any business transactions or relationships with anyone on behalf of AML or Some Corporation; (3) use, possess or control any of AML's or Some Corporation's property (whether personal property, intellectual property, or otherwise); (4) communicate with anyone on behalf of AML or Some Corporation; or (5) represent to anyone (orally, in writing, or otherwise) that you are an officer (CFO or otherwise), manager, employee, agent or representative of either AML or Some Corporation.

Regardless of your response to this letter, you have a legal obligation to preserve and not destroy, delete, conceal, or alter any evidence relevant to this matter (in any existing form or media). You must not destroy any evidence and you must suspend all document and data destruction activities, including any automatic delete functions. Failure to do so may result in sanctions being imposed against you for spoliation by a court if litigation is commenced.



Wyatt Grantham
March 04, 2020
Page 5

Nothing contained in or omitted from this letter shall be deemed a waiver of any of my clients' rights or remedies with respect to this matter, nor is this letter intended to be a complete statement of the facts, law, or issues that will be addressed if this matter proceeds to litigation.

Furthermore, this letter is intended for settlement purposes only and, pursuant to Federal Rule of Evidence 408 and all state law equivalents, is not admissible in any legal proceeding.

The above proposal is your only opportunity to avoid the legal consequences of your actions. The above settlement proposal is withdrawn if not accepted by or before **5:00 p.m. PST on Monday, March 9, 2020**. If I do not receive a written, substantive response from you or your attorney(s) by or before then, I will assume you have no interest in resolving this matter and I will refer it to Virginia counsel (cc'd below) for escalation.

Sincerely,

**JABURG & WILK, P.C.**

Michael B. Dvoren, Esq.

cc: Joshua Stacy; Carl Philip Horton, Esq. (VA Bar No. 13771)



EXHIBIT
15

**Affordablemarketinglists** ⌄    Search...

Feedback about this page?

- Home
- Updates
- Payments
- Balances
- Customers
- Reports

- Atlas
- Radar
- Billing
- Connect
  - **Accounts**
  - Transfers
  - Collected fees
- Orders
- Issuing
- Terminal
- Capital

- Developers
- View test data

- Settings

| | | | |
|---|---|---|---|
| Name | Lord Abbey LLC | Phone number | (703) 785-3738 |
| Employer Identification | Provided | Business VAT ID | |
| Industry ⓘ | Software, SaaS | Address | 1142 Arbol Way |
| Business website | | | San Jose, CA 95126 |
| Product description | Software development, operations, and marketing services. | | |

### MANAGEMENT AND OWNERSHIP

> **Wyatt Grantham** ✓
Representative, Executive, Owner, Owner

### Balance

Send funds    Pay out to bank    ···

| Total balance | Available to pay out | Available soon | In transit to bank |
|---|---|---|---|
| $0.00 | $0.00 | $0.00 | $0.00 |

Debit negative balances ⓘ  Off

### Activity

View financial reports

Payments    Transfers    **Payouts**    Collected fees

| AMOUNT | | | EXTERNAL ACCOUNT | DESCRIPTION | STATEMENT DESC. | INITIATED | EST. ARRIVAL |
|---|---|---|---|---|---|---|---|
| $3,500.00 | USD | Paid | Wells Fargo Bank •••• 6382 | po_1G7Z91FmkFtj01XnRlhuub0I | | Feb 1, 10:29 PM | Feb 3 |
| $18,500.00 | USD | Paid | Wells Fargo Bank •••• 6382 | po_1F1U7iFmkFtj01XnfUcwCQvJ | | Dec 3, 2019, 12:40 AM | Dec 4, 2019 |
| $5,000.00 | USD | Paid | Wells Fargo Bank •••• 6382 | po_1FbgPeFmkFtj01Xnl83cTR3H | | Nov 5, 2019, 11:46 PM | Nov 7, 2019 |

4/7/2020                    Gmail - Could you help a brother out?

 **Gmail**

Josh <joshua.stacy@gmail.com>

---

## Could you help a brother out?

3 messages

---

**Josh** <joshua.stacy@gmail.com>           Thu, Mar 26, 2020 at 4:55 PM
To: "Cate (Bell) Grantham" <catebellgrantham@gmail.com>
Cc: Jessica Hubbard <jes.hubbard@gmail.com>, stephenyoungllc <stephenyoungllc@gmail.com>, lgstacy
<LGStacy@aol.com>, markeee13531 <markeee13531@gmail.com>, Silly <dgage8@gmail.com>, James Gage
<jgage3@gmail.com>, Darrell Hubbard <d.raymond.hubbard@gmail.com>

Sister Grantham,

In case you are wondering why Wyatt and I are at odds, it probably has something to do with the fact that despite him
spending however much time doing whatever he was doing with all of these other companies he's worked at, he appears
to have resorted to stealing from me. When I was struggling and needed help from your husband, he literally took that as
an opportunity to hijack my business and claim it as his own. In order to try to get access to my banking accounts so I
could, among other things, get Steve paid, I gave Wyatt the title and position of CFO. He accepted that and conducted
business claiming to be operating in my best interest. Combining the fact that he purports to be an active member of the
church in good standing, I assumed his bishop and stake president ask him if he is honest in all his dealings with fellow
man or some version of that. I suspect there are any number of other reasons why, if I were your husband, I would feel
concerned that I had disrespected our temple covenants by, while claiming to be helping a friend, diverted a very
significant amount of money from my business to Lord Abbey, LLC.

I put this all in an email because I am desperately trying to bring this nightmare to an end. See, in October I want into a
mental hospital for four days. During that time, your husband, with his infinite genius, registered ListShack.support and
began using resources trusted to him as a result of his agreeing to hold a title with my company and partially on the
understanding he was trustworthy.

Check this out...



Above is a screenshot from the Stripe account that your husband refused to return to me, but was successfully returned
by Stripe after they completed their investigation. While I have been reviewing it, I can't help bot notice when I compare
2018 to 2019, it looks like Wyatt took all of the revenue and ran with it. Check out below.

DEFENDANTS' NOTICE OF REMOVAL

4/7/2020                                                     Gmail - Could you help a brother out?



See, this is a comparison between my 2018 and my 2019.  In September there are some spikes, one of them was Wyatt creating an account to move $27,000 from this account into a Lord Abbey, LLC account, you know, the one that you're a cofounder with him on.  The list of things your husband has done in an attempt to steal money and credit that is rightfully mine is disgusting by any standards.  I've attempted to give him every chance to turn things over gracefully, especially given the amount of understandable confusion, but at this point there is no defense for his actions.

The Courts in LA and Virginia and most of this country altogether are currently shut down.

I have copied a criminal case that you may find interesting.  Your husband took passwords that were entrusted to him in his position as CFO, diverted $27,000 of transfers to Lord Abbey, LLC, and then appears to have hijacked everything he could to ListShack.support, which brazenly violates my trademark rights.  He also is attempting to regain access to servers that are not only not his, but his further attempts to try to move in that direction only further prove is attempts at embezzlement and larceny.

Why do I mention all of this to you?  I was hoping you could persuade him that it's not worth the price he'll pay to continue down this path.  At this point I need him to transfer the URL ListShack.support to me.  He registered that, then used my email and password (I gave him access to) in order to effectively hijack my business.  It is disgusting that Wyatt is resorting to such behavior, but what makes it really problematic for you is I really don't see you being admitted to the bar when it appears you are associated with so much fraud.  It's possible your involvement in this could have been limited, but you are involved and you are in a position to stop it.

The only response I need from you is for Wyatt to transfer the ownership of listshack.support to me as well as for him to assign over the Stripe account and/or otherwise inform Stripe to transfer it to me.  If you really give two flying fucks about my daughter, just realize I'm a fucking man that's been without my medication for like 9 months while your dipshit husband has been plotting and scheming and stealing from me.  I'm not a vengeful guy, I just need him to stop fucking stealing from me.

As respectfully as I can currently muster,
Brother Stacy

---

**4 attachments**

📄 **Dimaio v. Commonwealth.pdf**

DEFENDANTS' NOTICE OF REMOVAL

4/7/2020                                                Gmail - Could you help a brother out?

152K

📄 **BUSINESS_ASSET_PURCHASE_AGREEMENT_(1)_signed.pdf**
319K

📄 **190913_MeetingMinutes_SomeCorporation_v2.pdf**
63K

📄 **03.04.2020 Demand Letter to Wyatt Grantham_FINAL.pdf**
145K

---

**Cate Grantham** <catebellgrantham@gmail.com>                    Fri, Mar 27, 2020 at 9:00 AM
To: Josh <joshua.stacy@gmail.com>
Cc: Jessica Hubbard <jes.hubbard@gmail.com>, stephenyoungllc <stephenyoungllc@gmail.com>, lgstacy
<LGStacy@aol.com>, markeee13531 <markeee13531@gmail.com>, Silly <dgage8@gmail.com>, James Gage
<jgage3@gmail.com>, Darrell Hubbard <d.raymond.hubbard@gmail.com>

Josh,

I hope you and Wyatt can work things out. You have been friends for a long time.

These are harsh and untrue accusations, Josh. One of your attachments shows that you sold the business assets to
Wyatt. If you have regrets about that, you should really work with him. The sad thing is that because you got your attorney
involved, Wyatt can't really help you just as a friend anymore. He had to hire his own attorney to protect himself from this
unexpected onslaught. I wish you would have just picked up the phone and called him. You know he is a good man.

Sincerely,

Cate

[Quoted text hidden]

---

**Josh** <joshua.stacy@gmail.com>                                Fri, Mar 27, 2020 at 10:37 AM
To: Cate Grantham <catebellgrantham@gmail.com>
Cc: Jessica Hubbard <jes.hubbard@gmail.com>, stephenyoungllc <stephenyoungllc@gmail.com>, lgstacy
<LGStacy@aol.com>, markeee13531 <markeee13531@gmail.com>, Silly <dgage8@gmail.com>, James Gage
<jgage3@gmail.com>, Darrell Hubbard <d.raymond.hubbard@gmail.com>

Cate,

The document you're referring to was void from inception because of a list of reasons, not the least of which was the
document itself was a work of fraud.  According to Wyatt, that document was created after we spoke with Erin Masin,
Robert Baumgartner, Michael Dvoren, and several other attorneys, allegedly on my behalf.  Robert Baumgartner, after I
discussed Wyatt's conversation with him, referred me to an attorney that, after reviewing the demand letter from Mr.
Dvoren and the criminal complaint with the Fairfax County Police, believes that Wyatt took advantage of me while I was
sick.  The purchase agreement was fraud on his part, no way around it.

Here is one of many text messages Wyatt sent Steve.

 **Ya, I was worried that he wouldn't be able to control himself if I let him get back online.**

Wyatt, intentionally, sabotaged my efforts to fix my business. Among other things, he told Steve to not work with me and he told me to never call Steve again.

wyattgrantham.com › about  ▼

## About - My name is Wyatt

I do startups, and I love my work. I am currently starting up Directangular. I also started up

**Listshack** where I helped get things rolling to $1M+ annual revenue.

What the fuck is that about? Wyatt raises three million dollars of investor money and starts a big data company, but for some reason on his website he'd rather claim he started Listshack (which is a FUCKING LIE) and also claim he helped get us rolling to $1M+ in revenue. Your husband is a fucking liar. If he is standing by it, then why is WyattGrantham.com down? I have copies of everything I'd need for court; he can't just try to delete the internet history of the things he's done. Going back as far as 2018 he made this claim. This is the thanks I get for giving him work when his startup couldn't afford to pay his bills. He abandoned his work with me three weeks earlier than we agreed to, I believe because he "needed to do what's best for his family". Well, maybe not stealing from Josh would have been better. I tried to overlook him getting paid $7k for a month of work and leaving three weeks early, but the math on that just didn't sit right. When I was in LA having lots of issues and needed a friend to help I thought, "well, how convenient, if Wyatt has the three weeks now then that would probably be more than enough of his time to help me get things back on track". Jokes on me.

I had issues with identity theft and the bank refused to talk to me because I didn't have my photo ID. Wyatt went to Wells Fargo with me and witnessed first hand with Zachary something or other how difficult the bank was being. He abandoned trying to help me with the banking issues (despite accepting the position role of CFO) and then helped himself to what I suspect he was trying to steal for a long time. On October 10, 2019 he, under the tile of CFO, submitted documents to Virginia state removing Steven from Some Corporation and added himself.

Admittedly, this has been a very difficult time for me. Here is a screenshot from the LASD website showing them having me in custody from 8/5/2019 until 8/14/2019. During that time I did not have my CPAP (I stop breathing roughly 50 times an hour while I sleep without it), my bipolar medication (300 milligrams of lamictal), or marijuana (which I use to treat my anxiety). After that, my brain was fried. I was exhausted and destroyed from my divorce, but literally at that point I couldn't function because of the damage to my mental state. It was so severe that it wasn't until a court hearing in LA Superior Court on 2/27/2020 that my mental competency was determined restored. Did your husband help me get the business banking figured out so I could get health insurance and get treatment? No, because he's a fucking prick. In my time of extreme need and desperation, he thought it would be better to steal from me, than to help me get back on medication and under the care of medical professionals.

*I*

4/7/2020                              Gmail - Could you help a brother out?

Charge Level:

| ARREST | | | |
|---|---|---|---|
| Arrest Date: 08/05/2019 | Arrest Time: 1159 | Arrest Agency: 2701 | Agency Description: LASD-MARINA DEL REY STATION PATROL |
| Date Booked: 08/05/2019 | Time Booked: 1533 | Booking Location: MDR | Location Description: STA - MARINA DEL REY |

| BAIL | | |
|---|---|---|
| Total Bail Amount: 0 | Total Hold Bail Amount: 0.00 | Grand Total: 0.00 |

| HOUSING LOCATION |
|---|
| Housing Location: - |
| Permanent Housing Assigned Date: 08/14/2019    Assigned Time: 0205 |
| Facility: |
| Address:     City: |
| **Schedule A Visit** |
| *For County facility visiting hours, Please call (213) 473-6100 at Inmate Information Center.* |

| COURT | | | |
|---|---|---|---|
| Next Court Code: S95 | Next Court Date: 08/21/2019 | Next Court Time: 0830 | Next Court Case: SA10109401 |
| | Court Name: L A SUPERIOR COURT DEPT 95 | | |
| | Court Address: 1945 S. HILL STREET     Court City: LOS ANGELESUPT | | |

| RELEASE | |
|---|---|
| Actual Release Date: 08/14/2019 | Release Time: 0743 |
| Release Reason: BOND | Reason Description: BOND |
| Release Agency: | Agency Description: |

W    About   Contact



# My  name  is  Wyatt
### Here's a little about me.

**I do startups, and I love my work.**
I am currently starting up Divertangular.

I also started up Listshack where I helped get things rolling to $1M+ annual revenue.

I did a fun side project called Home Toro that provides free websites and social media marketing tools for Real Estate professionals. Check out a sample site at Your allBroker HomeToro.com.

I also started up Analyze Corporation where I helped to raise $3M+ in growth capital through Angel List, Keretsu Forum, and friends and family.

I learned business working for Raytheon in their Leadership Development Program. After graduating the program I helped start the Cyber training product-line.

I also like to invest in software startups. I've found startups through Piranha Tank and Startups Ignite.

Connect with me on LinkedIn

I graduated from Brigham Young University.

Like seriously, what the fuck is that? "I also started up Listshack where I helped get things rolling to $1M+ in annual revenue". Fun fact, at lunch at the Panera around the corner from Analyze Corp, Wyatt told me he didn't think a race to the bottom would work. How sad is it that he would rather try to claim credit for work he didn't do than own up to Analyze. Fun fact, Wyatt actually came to my office to have me make the first website for Analyze Corporation. Then he tells Steve that I'm just a guy that sold computers on ebay, that I'm drooling in a corner, and that I'll never come back. Well, honestly, if Wyatt would have acted like a friend and helped me get my health insurance straightened out I probably would have done a lot better. As I understand it, that was well within his competency. As I understand it, CFO means Chief Financial Officer and I had financial problems.

DEFENDANTS' NOTICE OF REMOVAL



I didn't realize it until much after the fact, but i you look at the above you'll see that Wyatt, after I gave him a temporary password for my email so he could help with things, set up a mail filter and helped himself to all sorts of emails and information, including sending out an email in around November to let people know of the new domain, ListShack.support, that your husband registered while I was literally in a mental hospital a month after appointing Wyatt the CFO.  Apparently he still had not found the time to figure out the banking or the health insurance.  On the other hand, he was able to successfully hijack the business.



Here is a copy of ListShack.support.  It literally has the ListShackPro.com logo on it.  Your husband did this and transferred customers from a Stripe account for Affordable Marketing Lists, LLC to a stripe account for Lord Abbey, LLC (I presume), cloned List Shack, and took $27,000 from the Affordable Marketing Lists, LLC stripe account all before he even presented me with a purchase offer. Him and I spent very little time talking together and I assumed he was just brushing me off.  I assumed this because I was hoping when I asked him to be the CFO he could help me fix the banking issues and get my health insurance sorted out.  Instead, he effectively left me for dead so he could steal from me.

Wyatt is not a good man.  Wyatt is a thief.  You appear involved.

As I mentioned in my previous email, I only wanted two things.  I'll take your response as a refusal.  I hope you've found the information I've provided to be interesting.  Could you explain to Jessica why you believe that Ainsley should be getting fucked by your husband stealing from me?  This may come as a surprise, but I am currently behind on support payments to the tune of around $40k.  Do you think if your husband hadn't been stealing from me I would have been able to make those?  Do you think Wyatt's attempts to steal my business have adversely impacted Ainsley or Jessica?  Do you think that the Fairfax County Courts are going to find it interesting that the reason I have been unable to pay child support is because your husband, while appointed as the CFO, diverted fortunes directly away from me?
[Quoted text hidden]

---

**4 attachments**



**Is ListShak Back_.pdf**
487K

**gimmelists.com Pricing.pdf**
177K

**SomeCorporationRemovingSteve.pdf**
100K

**Partnership Dissolution Agreement_AML_Lord_Abbey_200227.docx**
22K

DEFENDANTS' NOTICE OF REMOVAL





## ATTORNEY GENERAL OF MISSOURI
## JEFFERSON CITY
### 65102

ERIC SCHMITT
ATTORNEY GENERAL

P.O.Box 899
(573) 751-3321

September 16, 2019

LISTSHACK PRO/Affordable Marketing Lists, LLC
2915 Hunter Mill Road Suite 16
Oakton, VA, VA  22124


RE: Complaint No. CC-2019-08-003654 MICHAEL D OVERKAMP

Dear LISTSHACK PRO/Affordable Marketing Lists, LLC:

Our office has not received a response to the enclosed consumer complaint.
Please understand, that without a response, the Missouri Attorney General's
office will maintain the complaint in our permanent records, with the facts of the
transaction as reported by the consumer.

Therefore, we would appreciate an immediate response from you.  If we do not
receive a response within the next seven days, further action by this office may be
warranted.


Sincerely,

*Sue Reed*

Sue Reed
Office of the Attorney General
Consumer Advocate
Consumer Protection Division
P.O. Box 899 | Jefferson City, MO 65102
Email: Sue.Reed@ago.mo.gov
Phone: (573) 751-3630| Fax: (573) 751-7948

## Consumer Complaint No. CC-2019-08-003654 Details

### Consumer Information

| | |
|---|---|
| **Name:** | MICHAEL OVERKAMP D |
| **Address:** | PO BOX 82 |
| | MOKANE, MO 65059 |
| **Primary Phone:** | (573) 746-6101 (Cell) |
| **Secondary Phone:** | |
| **Email:** | OLLIEOINS@GMAIL.COM |

### Business Information

| | |
|---|---|
| **Business Name:** | LISTSHACK PRO/Affordable Marketing Lists, LLC |
| **Address:** | 2915 Hunter Mill Road Suite 16 |
| | Oakton, VA, VA 22124 |
| **Phone:** | 8883820055 |
| **Fax:** | |
| **Email:** | sales@listshackpro.com |
| **Website:** | listshackpro.com/contact-us.html |
| **Contact Person:** | JOSH, OWNER |

### Complaint Information

| | |
|---|---|
| **Complaint Number:** | CC-2019-08-003654 |
| **Consumer Info:** | Over Age 60 No; Disabled: No; Veteran: No |
| **Category:** | Financial - Investment/Securities/Business Opportunity |
| **Transaction Date:** | 7/24/2019 |
| **Financial Loss:** | Yes; Sales Method: Internet; Payment Method: Credit Card; Amt Paid: 50.00 |
| **Contract Signed:** | No |

**Brief description of complaint:**

Signed up for this service, a lead generation company. $50 per month to obtain scrubbed addresses to mail or lead drops and it does not work. Number is busy. Emailed multiple times with no responses. Saw this online too. Basically they took our money and provided nothing.

https://insurance-forums.com/community/threads/listshackpro-down-for-the-count.98964/

**Consumer has indicated that the following statements apply to this complaint:**

- Consumer has taken these action(s):  - Sent Email to business - Other: TRIED CALLING MULTIPLE TIMES. PHONE DOES NOT WORK
- Consumer has contacted agencies:
- Consumer would like complaint resolved via:  - Refund - Investigate business

Printed 9/16/2019

4/7/2020                                                    Gmail - Very Very Disappointed Long Time Customer

 Gmail                                             Josh <joshua.stacy@gmail.com>

## Very Very Disappointed Long Time Customer

**Tommy Averette** <theaverettegroup@gmail.com>                    Sun, Oct 27, 2019 at 8:43 AM
To: sales@listshackpro.com

Dear List Shack.

I am making what I feel to be a futile effort to get you to address the problem with my account. I use the word FUTILE because I have made endless attempts to contact yall to address it ... and have YET to get any single sort of a response from LIST SHACK back. I have called and left numerous messages with your USELESS cheezy cheap attempt at an operator service. I have left messages through your online support section. And got NOTHING in return from any of these.

In the past, I have referred yall now to numerous individuals to recommend adding yall to their lead sources, and I now regret that. I feel yall don't give a crap about fixing customers concerns.... but yall sure are quick to get your monthly draft out every month right on time.

HERE IS MY FINAL ATTEMPT before cancelling my subscription ... let's' see if you actually give a crap???

CALL ME at 225-266-6595 -
-- my personal cell number ...... if for some reason I miss your call , leave a voice mail with a DIRECT CONTACT NUMBER that I can call back to actually get a LIST SHACK PRO technician who can actually fix my problem .   Not just another operator service person.

I hope you are still an honorable service and can rectify this complaint?

## Tommy Averette

-----------------------------------------

-----------------------------------------



**Direct Line: 225-266-6595**
**Direct Fax: 888-977-3595**
**Email: theaverettegroup@gmail.com**

**This message contains confidential information and is intended only for originally listed recipients. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately if you have received this e-mail by mistake and delete this e-mail from your system.**

Advertise With Us

Forum Rules

Privacy Policy

INSURANCE NEWS

Life Insurance

Annuities

Health Insurance

Employee Benefits

Medicare

Property & Casualty

Software

Practice Building

FORUM DISCUSSIONS

General Discussion

Life Insurance

Indexed Universal Life

Annuities

Senior Insurance

Employee Benefits

P&C Insurance

View All Forum Categories

INSURANCE PROFESSIONALS LINKEDIN GROUP

EXHIBIT A
DEFENDANTS' NOTICE OF REMOVAL



Forum software by XenForo® © 2010-2019 XenForo Ltd.
XenForo add-ons by Waindigo™ ©2015 Waindigo Ltd.
Some XenForo functionality crafted by **ThemeHouse**.

DEFENDANTS' NOTICE OF REMOVAL



From: **RoseAnne Alam** <rosie.alam .com>
Date: Thu, Apr 23, 2020 at 4:32 AM
Subject: my account
To: <sales@listshackpro.com>

I had reset my password
But thinks I need to sign up...

I paid this on 4/13 So not sure what happened.
Please contact me

userid is rosie.alam@gmail.com
--
Sincerely,
RoseAnne Alam
(678) 622-8129